S07A0262. LOWERY v. THE STATE.

(646 SE2d 67)

BENHAM, Justice.

Appellant William Junior Lowery was found guilty of the malice murder of Maxine Harper and sentenced to life imprisonment.[1] On appeal he takes issue with the sufficiency of the evidence, the admission of testimony concerning a prior difficulty between appellant and the victim, the content of several jury instructions, and the trial court's handling of a communication from the jury during its deliberations.

1. Maxine Harper, the mother of appellant's child, suffered a fatal gunshot wound that entered her head through her right ear while she was in a pickup truck with appellant and Stacey Williams, her adult son by another man. Her body was found in the pickup truck which was parked on the shoulder of a road near her Worth County

---

[1] The victim was killed on January 19, 2002, and a warrant for appellant's arrest was issued on January 21, 2002. On October 15, a Worth County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder (aggravated assault), and aggravated assault. Appellant's trial commenced on November 18, 2003, and concluded on November 21, with the jury's return of guilty verdicts on all counts. On November 26, 2003, the trial court filed its sentence of life imprisonment on the malice murder conviction, after having vacated by operation of law the felony murder conviction and having merged the aggravated assault conviction into the murder conviction. Appellant's motion for new trial was timely filed on December 8, 2003, and amended on November 29, 2004. The trial court conducted a hearing on the motion on November 3, 2005, and denied the motion on August 14, 2006. The notice of appeal was timely filed on September 11, 2006, and the appellate record was docketed in this Court on October 20. Oral argument was heard on February 13, 2007.

home, and her cellular telephone and the Lorcin .25 caliber semi-automatic handgun that was established to be the murder weapon were found 1,519 feet from the body. The State presented evidence appellant had entered the victim's home earlier in the evening by kicking the door in and announcing that his pickup truck had broken down. According to Williams, appellant argued with the victim and accused her of "going somewhere." He then asked the victim and Williams to take him to his truck. The trio left in Williams's pickup truck with Williams driving and following the directions appellant gave him from the passenger seat, and with the victim sitting between them. Williams testified that while he was driving he heard a loud click and a popping noise that caused his ears to ring, and his mother rested her head on his shoulder and did not speak again. Williams continued to drive until appellant told him to pull off the road. When Williams stopped his truck, he heard another clicking noise and appellant reached around the victim and made a threatening gesture at Williams, who exited his truck and ran off. He ran to the home of family friends to whom he reported that a man "had whipped" his mother. The friends accompanied Williams back to his pickup truck where several deputy sheriffs had responded to calls for emergency assistance. Williams told investigators he was the only one who had driven his truck that night, and he surrendered his keyring containing the truck's ignition key to the lead investigator that night.

The State presented evidence of prior incidents in which appellant had reacted violently against the victim when he believed she had been seeing another man. A male friend of the victim testified that appellant had "busted in" to the victim's home while the witness was visiting six months before the victim was killed, had complained about the victim having another man there, and had struck the victim with his fist, knocking her off the chair on which she sat and knocking her glasses off her head. Appellant's cousin (and the victim's sister-in-law) testified appellant had called her in January 1999 and told her he had tracked the victim to a local motel by entering her empty home and checking her telephone's "Caller ID" feature where the local motel's telephone number appeared. Appellant told his cousin he saw the victim leave a motel room in the company of another man and "if his gun had not jammed, he would have shot them both."

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it admitted the testimony of his cousin recounting appellant's 1999 statement that he would have shot the victim and her male companion had his gun not jammed.

> [E]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being tried.

*Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). Threats of violence to the victim made to others are admissible to show motive and intent. *Riley v. State*, 278 Ga. 677 (9) (604 SE2d 488) (2004). A witness's testimony concerning a defendant's statements to the witness demonstrating ill will to the victim is admissible. *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002).[2] The trial court did not err in allowing the testimony.

3. Before the State presented its evidence of prior difficulties between appellant and the victim, the trial court instructed the jury that its consideration of the evidence was limited to "showing, if it does, the state of feeling between the defendant and the alleged victim and the motive and intent of the defendant or the alleged victim at the time of the incident alleged in the indictment." Citing *Stephan v. State*, 205 Ga. App. 241, 243 (422 SE2d 25) (1992), appellant maintains the trial court's jury instruction was not sufficiently limiting in that the State offered the evidence to establish appellant's bent of mind, but the instruction permitted the jury to consider the evidence to show appellant's motive and intent.

As stated earlier, evidence of prior difficulties between the defendant and the victim in the form of a defendant's threats of violence against the victim is admissible as evidence of the relationship between the defendant and the victim, and is admissible for a very limited purpose: "[it] may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being [tried]." *Wall v. State*, supra, 269 Ga. at 509. In contrast, evidence of a defendant's commission of a similar transaction against one other than the victim is admissible for a number of purposes: to show "knowledge, common design, modus operandi, motive, intent, good or bad faith, bent of mind, plan, scheme, . . . course of conduct, identity, or other matters

---

[2] While the trial court misspoke when it stated that evidence of prior difficulties was always admissible (see *Wall v. State*, supra, 269 Ga. at 508, n. 3, where this Court noted "not all evidence proffered as . . . portraying a prior difficulty between the defendant and the victim may be sufficiently relevant to [that issue] to permit their admission into evidence"), there was no error in admitting the evidence at issue in this case.

dependent upon a person's state of mind. . . ." *Stephan v. State*, supra, 205 Ga. App. at 243. Because of the variety of possible purposes authorizing the admission of similar transaction evidence, a trial court's instruction limiting the jury's use of that evidence must be tailored to the specific purposes for which the evidence was admitted, and an instruction articulating a comprehensive list of possible purposes is not appropriate. Id. See also *Watson v. State*, 230 Ga. App. 79 (5) (495 SE2d 305) (1998). Such a limitation is not necessary when the trial court admits evidence of a prior difficulty between the defendant and the victim because such evidence is admitted for very limited purposes — the state of feelings between the two and the defendant's motive, intent, and bent of mind. Inasmuch as the trial court appropriately limited the jury's consideration of the evidence of prior difficulties to motive, intent, and bent of mind, the trial court did not err when it did not further constrict the jury's consideration of the evidence to only motive and intent.

4. Appellant next takes issue with several aspects of the trial court's use of an *Allen* charge the trial court gave the jury upon being informed during their deliberations that they were deadlocked. See *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

(a) Appellant maintains the charge was impermissibly coercive because it was legally inaccurate, it was given immediately after the trial court requested the numerical split of the jury, and because the length of deliberation following the charge was "disproportionately shorter" than the period of deliberation prior to the charge. "The issue in reviewing (an *Allen*) charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *Wright v. State*, 274 Ga. 305, 307 (2) (553 SE2d 787) (2001).

Appellant points out that language in the *Allen* charge given by the trial court ("This case must be decided by a jury selected in the same manner in which this jury was selected, and there is no reason to think that a jury better qualified than you would ever be chosen") has been deemed inaccurate by this Court and its further use discouraged. *Burchette v. State*, 278 Ga. 1 (596 SE2d 162) (2004).[3] In *Burchette*, however, this Court concluded that the inaccurate language did not render the *Allen* charge impermissibly coercive since the inaccurate language "constituted but one small portion of an

---

[3] The change announced in *Burchette* is applicable to trials that take place after *Burchette* was decided. See *Widner v. State*, 280 Ga. 675 (3) (631 SE2d 675) (2006). Appellant's trial took place prior to the date of the *Burchette* decision. Thus, even if it were reversible error to include the "must-be-decided" language in the *Allen* charge, that ruling would not be applicable in this case. See *Benson v. State*, 280 Ga. App. 643, 644 (634 SE2d 821) (2006) (mere use of language disapproved of in *Burchette* does not warrant reversal).

otherwise balanced and fair *Allen* charge." Id. at 3. Likewise, giving an *Allen* charge after inquiring into the numerical division of the jury where there is no announcement of which way the vote is split, is not coercive as it does not place undue pressure on the jurors to abandon their convictions. *Black v. State*, 255 Ga. 668 (2) (341 SE2d 436) (1986). See also *Muhammad v. State*, 243 Ga. 404 (4) (254 SE2d 356) (1979) (declining to follow *Brasfield v. United States*, 272 U. S. 448 (47 SC 135, 71 LE 345) (1926), where the U. S. Supreme Court, in the exercise of its supervisory authority over the federal courts rather than as an interpretation of the U. S. Constitution, held it was per se reversible error for the trial court to ask a deliberating jury its numerical division).

Finally, we need not address appellant's effort to establish coercion by comparing the length of jury deliberations before and after the *Allen* charge was given. We have determined, as a matter of law, that the inaccurate language of the *Allen* charge did not make it coercive because the inaccurate language was "but one small portion of an otherwise balanced and fair *Allen* charge. . . ." *Burchette v. State*, supra, 278 Ga. at 3. See also *Scott v. State*, 281 Ga. App. 106 (3) (635 SE2d 582) (2006); *Benson v. State*, 280 Ga. App. 643, 645 (634 SE2d 821) (2006); *Smith v. State*, 275 Ga. App. 60 (6) (619 SE2d 694) (2005); *Turner v. State*, 275 Ga. App. 723 (621 SE2d 830) (2005); *Graham v. State*, 273 Ga. App. 187 (2) (614 SE2d 815) (2005); *Nowill v. State*, 271 Ga. App. 254 (3) (609 SE2d 188) (2005). Additional factors mentioned in *Burchette* — the length of jury deliberations before and after the *Allen* charge and the jurors' reaffirmation of their verdict when polled — do not render a non-coercive charge coercive. Rather, these factors play an important role in determining coerciveness when there is a possibility the charge could be coercive, i.e., when it has not been determined as a matter of law that the charge is not coercive. See *Widner v. State*, 280 Ga. 675 (3) (631 SE2d 675) (2006) (where this Court determined *Burchette* was to be applied prospective only and, relying on *Hyde v. State*, 196 Ga. 475 (8) (26 SE2d 744) (1943), held that the version of the *Allen* charge at issue in *Widner* was not coercive, with no consideration given to the length of the jurors' deliberations or the result of polling the jury).

(b) Appellant next argues the trial court erred when it failed to disclose to appellant and his counsel the contents of the jury communication reporting their deadlocked status prior to the trial court responding to the communication by giving the *Allen* charge. By a written note, the jury foreman informed the trial court, "We have a couple of people that says no way to change mind. What do we do?" The trial court notified counsel of receipt of a communication from the jury, but not the contents, and summoned counsel to the courtroom. The jury was brought in and the trial court engaged the jury foreman

in a series of questions (whether a verdict had been reached on any count ("no"); whether they had taken a vote ("yes, sir"); whether they had taken more than one vote ("possibly two, yes, sir"); the numerical division of the last vote ("10-2"); and whether it was the same as the first vote ("yes")). The trial court announced it deemed further instruction necessary and gave the *Allen* charge.[4] After the completion of the charge and the jury's retirement from the courtroom, the trial court informed trial counsel and appellant of the contents of the jury's communication. Trial counsel voiced objection to the trial court's action and asserts on appeal that appellant's constitutional right to be present at all stages of the proceedings against him was violated and the trial court's failure to consult with defense counsel prior to responding to the jury's communication was an abuse of discretion and violated appellant's constitutional right to assistance of counsel.

"Within the Georgia constitutional right to the courts [embodied in Article I, Section I, Paragraph XII of the Georgia Constitution] is a criminal defendant's 'right to be *present*, and see and hear, *all the proceedings* which are had against him on the trial before the Court.' [Cit.]" *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998). A trial court's communication with a jury on substantive matters is a part of the proceedings to which the defendant and counsel are entitled to be present. Id. It is without dispute that appellant and his counsel were present when the trial court responded to the jury's inquiry (compare *Hanifa*, supra; *Lindsey v. State*, 277 Ga. App. 18 (625 SE2d 431) (2005)); the issue is whether the defendant's right to be present or his right to effective assistance of counsel includes the right to know the contents of the jury communication and to make suggestions regarding the trial court's proposed response.[5]

---

[4] Prior to the jury communication that resulted in the delivery of the *Allen* charge, there had been two other communications from the deliberating jury. Shortly after deliberations began, the trial court and trial counsel discussed on the record the fact that the foreman of the deliberating jury had inquired of the bailiff ("Can we get the tape that they showed us in here?") and, without making the trial court aware of the communication, the bailiff had responded by reminding the foreman, "Well, the judge in the instructions said all your evidence was coming up when we originally brought it." After hearing the contents of the exchange, trial counsel ratified the bailiff's action and the trial court instructed the bailiff to have the jury put any further inquiries in writing and to deliver the written communication to "us." Some time later, the trial court shared with defense counsel the jury's inquiry whether they could take a break for smoking, and the trial court provided counsel with the court's proposed response. The trial court sought defense counsel's endorsement of the proposed response to the jury's question, and trial counsel agreed with the trial court's proposed action.

[5] The appellate courts of several states and the United States Supreme Court have found fault with a trial court's failure to make counsel aware of the contents of a jury communication on a substantive matter prior to responding to the communication. The decisions rendered by these courts are not grounded in principles of constitutional law but in the appellate court's construction of a rule of criminal procedure or are an exercise of the court's inherent authority

(i) Appellant's right to be present "attaches 'at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure.' [Cit.]" *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). Under this standard, a defendant's right to be present is not violated by his involuntary absence from the jury charge conference at the conclusion of the evidence (id.), or by his involuntary absence from the conference held by a trial court with defense and prosecuting counsel to discuss a response to a deliberating jury's substantive inquiry. *Barrett v. State*, 275 Ga. 669 (4) (571 SE2d 803) (2002). Accordingly, appellant's right to be present was not violated by the trial court's failure to consult with appellant and counsel prior to responding to the jury's substantive communication in the case at bar.

(ii) A criminal defendant's constitutional right to counsel attaches after the onset of formal prosecutorial proceedings (*Hicks v. State*, 256 Ga. 266 (347 SE2d 589) (1986)), and continues through all

---

to create rules for the orderly administration of justice in the lower courts supervised by the appellate court. See *Rogers v. United States*, 422 U. S. 35, 39 (95 SC 2091, 45 LE2d 1) (1975) (where a deliberating jury's communication requests further instructions, FRCrP 43 and the Court's pre-Rule decisions regarding the "orderly conduct of trial by jury" "make it clear . . . that the jury's message should have been answered in open court and [defense] counsel should have been given an opportunity to be heard before the trial judge responded"); *Daniel v. State*, 119 Nev. 498 (78 P3d 890) (2003) (under NRS 175.451, trial court erred by failing to notify counsel before communicating to the jury on a substantive matter, but error is harmless when the appellate record reflects that the instructions given are correct); *Commonwealth v. Floyd P.*, 415 Mass. 826, 833 (615 NE2d 938) (1993) ("[B]efore a judge responds to a jury communication of legal significance . . . , counsel should be given the opportunity to assist the judge in framing an appropriate response and to place on record any objection they might have to the course chosen by the judge."); *People v. O'Rama*, 78 NY2d 270 (579 NE2d 189, 574 NYS2d 159) (1991) (CPL 310.30 imposes on the trial court the duty to notify the prosecuting attorney and defense counsel of the contents of a substantive jury communication to ensure that counsel has the opportunity to be heard before the trial court responds to the jury inquiry, and trial court abused its discretion when it withheld the contents of the jury's note from counsel); *Averhart v. State*, 470 NE2d 666, 690 (Ind. 1984) (when jurors request additional guidance from the court, the proper procedure is for the judge to notify the parties and give them an opportunity to be present in court before the trial court communicates with the jury, and the "better form" is to inform the parties of the court's proposed response to the jury); *Ivory v. State*, 351 S2d 26 (Fla. 1977) (a prejudicial violation of Florida Rule of Criminal Procedure 3.410 occurred when the trial court responded to a request from the jury without the prosecuting attorney, defense counsel, and defendant being present and having the opportunity to participate in the discussion of the action to be taken on the jury's request). See also *Welch v. Commonwealth*, 2006 WL 3386619 (Ky. 2006) (unpublished opinion) (trial court's response to a substantive jury communication outside the presence of the defendant and his counsel and without providing them with reasonable notice of the question or the answer was "improper procedural conduct" as Kentucky's RCr 9.74 "requires such questions to be answered in open court, in the presence of the jury, the defendant and counsel after reasonable notice to the parties"); *Harrigan v. State*, 692 A2d 412 (Del. 1997) (unpublished opinion) (appellate court "note[s its] concern at the trial judge's failure to share the contents of the [deliberating jury's] note with counsel before responding"). In contrast, Georgia does not have a criminal procedural rule that requires a trial court to give reasonable notice of the communication to the parties prior to responding to a deliberating jury's substantive communication.

critical stages of the proceeding brought against him. *Robertson v. State*, 280 Ga. 885, 886 (635 SE2d 138) (2006). Assuming without deciding that the right to counsel encompasses the right to have reasonable notice of a deliberating jury's substantive communication and a meaningful opportunity to be heard with regard to the proposed response thereto,[6] the failure of the trial court to inform counsel of the contents of the note and to seek comment on or input in the formulation of the court's response would constitute a violation of the right to counsel.

> Our analysis does not end here, however, because even error of a constitutional magnitude, such as an abridgment of the Sixth Amendment right [to counsel], can be deemed harmless. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U. S. 18, 24 (87 SC 824, 17 LE2d 705) (1967).

*Horne v. State*, 281 Ga. 799, 808 (5) (642 SE2d 659) (2007). "Whether a constitutional violation constitutes harmless error depends on whether the State can prove beyond a reasonable doubt that the error did not contribute to the verdict." (Punctuation omitted.) *Brawner v. State*, 278 Ga. 316, 319 (2) (602 SE2d 612) (2004). The decision to give an *Allen* charge is within the trial court's discretion (*Clifford v. State*, 266 Ga. 620 (4) (469 SE2d 155) (1996)), and we have determined in Division 4 (a) that the *Allen* charge given by the trial court, though inaccurate, did not constitute reversible error. Accordingly, we conclude that any error in failing to notify counsel of the deliberating jury's substantive communication and the failure to provide counsel

---

[6] Several decisions construing a state's applicable rule of criminal procedure have noted the vital role counsel plays upon being advised of the contents of a deliberating jury's substantive communication prior to a response being given. The Court of Appeals of New York noted that

> ensur[ing] that counsel has the opportunity to be heard *before* the response is given . . . is essential to counsel's ability to represent the client's best interests and, further, to ensure the protection of the client's constitutional and statutory rights at these critical postsubmission proceedings . . . [as] it is defense counsel who is best equipped and most motivated to evaluate the inquiry and proper responses in light of the defendant's interests.

*People v. O'Rama*, supra, 78 NY2d at 277. The Supreme Court of Florida observed that notice "would afford counsel an opportunity to perform their respective functions. They could advise the court, object, request the giving of additional instructions or the reading of additional testimony, and otherwise fully participate in this facet of the proceeding. . . ." *Ivory v. State*, supra, 351 S2d at 28.

with an opportunity to discuss the court's proposed response did not contribute to the verdict and therefore was harmless beyond a reasonable doubt.

In an exercise of this Court's inherent power to maintain a court system capable of providing for the administration of justice in an orderly and efficient manner (*Garcia v. Miller*, 261 Ga. 531, 532 (408 SE2d 97) (1991)), we take this opportunity to require trial courts to have jurors' communications submitted to the court in writing; to mark the written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response; and to make counsel aware of the substance of the trial court's intended response in order that counsel may seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 4, 2007.

*L. David Wolfe, Kathryn A. Westberry, Bruce S. Harvey*, for appellant.

*Paul Bowden, District Attorney, Bradford L. Rigby, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.