## S12A0193. SCOTT v. THE STATE.
### (725 SE2d 305)

HINES, Justice.

Nathaniel Scott appeals his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the fatal shooting of Edward Nurse. He challenges his convictions on multiple grounds: that the evidence was insufficient to support the verdicts; that the prosecutor made improper statements in closing argument; that the trial court failed to cure the prejudice resulting from the prosecutor's improper statements; that a witness's immunity agreement was improperly sent to the jury during deliberations; that the trial court twice delivered improper *Allen* charges to the jury; that the trial court provided incomplete instructions regarding aggravated assault and the defense of alibi; that trial counsel rendered ineffective assistance; and that the trial court erred in denying his motion for new trial. For the reasons that

follow, we find the challenges to be without merit, and we affirm.[1]

The evidence, construed in favor of the verdicts, showed the following. On the morning of July 20, 2007, Nurse stopped at a gas station and convenience store on Martin Luther King, Jr. Drive in southwest Atlanta. Nathaniel Scott ("Scott") and his cousin Deonta Scott ("Deonta") were already at the location. Before Nurse could exit his vehicle, Scott shot him in the head through the passenger's side window. Officers arriving at the scene found Nurse fatally wounded in the car, the driver's side door open, and the car's right passenger window shattered. A .40 caliber shell casing was found at the scene. Surveillance video from the gas station recorded two persons of interest, one carrying what appeared to be a firearm in his hand, and their vehicle, a black Ford Taurus. Seeking assistance from the public in the investigation, the police released the footage to the local news on August 16, 2007, and it was aired as a "crime stoppers" report.

Following the news report, the police were tipped off to information that led to the apprehension of Scott. In exchange for a grant of immunity, Deonta testified that, on the morning of the crimes, he had been with Scott at the gas station and that Scott had been driving the black Ford Taurus in question. A witness who knew Scott identified him from the surveillance footage. That same witness testified that he overheard Scott talking about how "he had killed someone on Martin Luther King," and that Scott regularly carried a .40 caliber handgun. Another witness testified that he had overheard Scott mention that he had shot someone at a gas station and that he and Deonta had fled from the scene in a black Ford Taurus.

1. Contrary to Scott's contention, the evidence was sufficient to enable a rational trier of fact to find Scott guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The crimes occurred on July 20, 2007. On December 21, 2007, a Fulton County grand jury indicted Scott for: Count 1 – the malice murder of Nurse; Count 2 – the felony murder of Nurse while in the commission of aggravated assault; Count 3 – the felony murder of Nurse while in possession of a firearm as a convicted felon; Count 4 – the aggravated assault with a deadly weapon of Nurse; Count 5 – the possession of a firearm during the commission of a felony; and Count 6 – the possession of a firearm by a convicted felon. Scott was tried before a jury August 31–September 3, 2009, and was found guilty of Counts 1, 2, 4, and 5. He was sentenced to life in prison on Count 1, and a consecutive five years in prison on Count 5. Count 4 merged with Count 1 for the purpose of sentencing, and the verdict on Count 2 was vacated by operation of law. An order of dead docket was entered on Counts 3 and 6. A motion for new trial was filed by trial counsel on September 11, 2009, and on September 21, 2009, different counsel filed a motion for new trial, and then an amended motion for new trial on February 11, 2011. The motion for new trial, as amended, was denied on April 28, 2011. A notice of appeal was filed on May 31, 2011, the case was docketed in the January 2012 term of this Court, and the appeal was submitted for decision on the briefs.

2. Scott contends that the assistant district attorney made improper statements during closing argument. Specifically, he maintains that the prosecutor inappropriately: expressed personal opinions regarding the credibility of several witnesses and Scott's guilt; implied that Scott posed a future danger to society if acquitted; commented on facts not in evidence; and appealed to the sympathies and biases of the jurors.

However, at trial the defense did not object to the now challenged comments by the prosecutor. In the appeal of a non-capital case, "the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *Fulton v. State*, 278 Ga. 58, 62 (7) (597 SE2d 396) (2004), quoting *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999). Nevertheless, Scott now urges that, regardless of whether an objection was made at trial, he is entitled to consideration of the merits of his complaints because of this Court's recent ruling in *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011). But, *Kelly* is inapposite as it stands for the proposition that OCGA § 17-8-58 (b) mandates plain error review whenever an appealing party properly asserts error in jury instructions, notwithstanding whether an objection was made at trial. Id. at 32.

Scott also cites *O'Neal v. State*, 288 Ga. 219 (702 SE2d 288) (2010), in support of his argument that he is entitled to appellate review of the claimed improper jury argument regardless of the failure to object. But, *O'Neal* does not aid him. In that case, the defendant did object to the argument, and the objection was sustained; however, the trial court did not give a curative instruction as requested by the defendant. Id. This Court determined that if a defendant successfully objects to a prosecutor in argument placing before the jury prejudicial matters not in evidence, the trial court is required by OCGA § 17-8-75 to give a curative instruction. *O'Neal v. State*, supra at 220.

However, even absent procedural waiver, Scott cannot prevail in his complaints about improper argument by the State. A closing argument is to be judged in the context in which it is made. *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008). What is more, a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses. *Tucker v. State*, 313 Ga. App. 537, 542 (2) (vi) (722 SE2d 139) (2012). None of the numerous instances of the State's comments cited by Scott as improper and prejudicial are outside the ambit of permissible closing argument by the prosecutor.

3. Scott makes the related contention that the trial court

committed reversible error by failing to intervene during the prosecutor's closing argument. But, this complaint fails as it has been determined that the instances cited by Scott do not constitute improper argument; therefore, Scott has not shown any need for the trial court to have intervened. See Division 2, supra.

4. Scott contends that the trial court gave erroneous jury instructions with respect to the defense of alibi and the definition of aggravated assault. Upon inquiry from the trial court following completion of its charge to the jury, Scott stated that there were no exceptions to the charge. However, "appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions." *Kelly*, 290 Ga. at 32. The "proper inquiry . . . is whether the instruction . . . was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (Citation and punctuation omitted.) Id. at 33.

Scott submits that the trial court failed to charge that the State bore the burden of disproving Scott's alibi defense beyond a reasonable doubt.[2] However, considering the charge as a whole, Scott's complaint is unavailing because the trial court completely and correctly instructed the jury on the defendant's presumption of innocence, the State's burden of proof beyond a reasonable doubt that the defendant committed the crimes at issue, and on assessment of the credibility of witnesses. *Rivers v. State*, 250 Ga. 288, 300 (8) (298 SE2d 10) (1982).

As to Scott's complaint that the trial court's jury instruction on aggravated assault neglected to define the necessary element of simple assault, it too fails. The record reveals that the trial court's instructions included the definition of aggravated assault with a deadly weapon in OCGA § 16-5-21 (a) (2)[3] and tracked the applicable

---

[2] The trial court instructed the jury, in relevant part, that:
Alibi, as a defense, involves the impossibility of the defendant's presence at the scene of the alleged offense at the time of its commission. The evidence presented with respect to time and place must be such as reasonably excludes the possibility of the presence of the defendant at the scene of the alleged offense.
Presence of the defendant at the scene of the crime alleged is an essential element of the crime set forth in this indictment, and the burden of proof rests upon the state to prove such beyond a reasonable doubt. Any evidence in the nature of alibi should be considered by you in connection with all the other evidence in the case. If, in considering the evidence, you should entertain a reasonable doubt as to the guilt of the accused, it would be your duty to acquit the defendant. On the other hand, if you believe from the entire evidence that the defendant is guilty beyond a reasonable doubt, you may convict.

[3] OCGA § 16-5-21 (a) (2) states:
(a) A person commits the offense of aggravated assault when he or she assaults:
. . .

definition of simple assault in OCGA § 16-5-20 (a) (1).[4]

5. Scott next maintains that the trial court violated the "continuing witness rule" by allowing a copy of Deonta's immunity agreement to go out to the jury room during deliberations. See *Davis v. State*, 285 Ga. 343, 348 (676 SE2d 215) (2009). But, the record does not show with certainty that the immunity agreement did go out with the jury. Nevertheless, assuming arguendo that it did and that the continuing witness rule would be applicable to such situation, Scott cannot demonstrate reversible error. Under the continuing witness rule, it is not reversible error for a writing to go into the jury room if that writing is consistent with the theory of the defense. *Clark v. State*, 284 Ga. 354, 355 (667 SE2d 37) (2008).

Whether the document is consistent with the theory of the defense is a function of the advantageousness of the writing to the defense and whether and how defense counsel utilizes that evidence. *Clark*, 284 Ga. at 355. The immunity agreement at issue arguably was advantageous to Scott in that he raised in cross-examination of Deonta that the agreement was the incentive for him to testify favorably for the prosecution. Also significantly, though the agreement was entered into evidence by the State, it was done so upon the request of the defense in the context of a "best evidence" objection, and defense counsel later used the agreement in an attempt to attack the credibility of the witness in the manner described above. In the situation in which defense counsel introduces written testimony into evidence or acquiesces in its admission, and further uses it to impeach a key witness for the State, such writing is considered to be consistent with the theory of the defense. Id. at 356.

6. Scott submits that the trial court erred in giving improper *Allen* charges to the jury. See *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896). The record shows that, after deliberating for several hours, the jury informed the bailiff that it was "deadlocked straight down the middle." Upon agreement by both the defendant and the State, the trial court then delivered a modified *Allen* charge.[5] Following inquiry from the trial court, Scott did not

---

(2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]

[4] OCGA § 16-5-20 (a) (1) provides:
(a) A person commits the offense of simple assault when he or she either:
(1) Attempts to commit a violent injury to the person of another[.]

[5] The trial court instructed:
All right. I am not satisfied that you've been at this long enough. What you're experiencing is not at all unusual. But, I do want you to go back in there and think about a few of the thoughts I gave you earlier.

When a jury deliberates, it is their function to listen to each other's views. Keep your ears open. You are not in there to represent the state. You are not in there to

object to the charge. The jury continued its deliberations the following day and found itself unable to reach a unanimous decision. The trial court then gave a second *Allen* charge, this time following the pattern charge. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.70 (4th ed. 2007). Again, Scott did not object. Several hours later, the jury returned to the courtroom with its unanimous verdicts.

As we noted in Division 4, when a party properly asserts that there was error in a jury instruction, this Court's review for plain error is required. *Kelly,* supra at 32. Thus, this Court must assess whether either of the *Allen* charges was obviously erroneous, and if so, whether such error likely affected the outcome of the proceedings. *Kelly,* supra at 33.

The central inquiry in reviewing an *Allen* charge is "whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *Lowery v. State,* 282 Ga. 68, 72 (4) (a) (646 SE2d 67) (2007), quoting *Wright v. State,* 274 Ga. 305, 307 (2) (553 SE2d 787) (2001). Scott fails to identify any language in either of the *Allen* charges amounting to an instruction constituting impermissible coercion. Instead, Scott argues that a single contextual factor, the amount of time the jury deliberated before and after the second *Allen* charge was given, is enough to demonstrate coercion. But, that is not the case. Contextual factors, like timing, may play a role in determining coerciveness where there is a possibility that the charge could be coercive. *Lowery,* supra at 73. However, the length of deliberations alone cannot "render a non-coercive charge coercive." Id. Thus, because Scott has not shown that either of the *Allen* charges was even potentially coercive, he cannot show error on this basis.

Additionally, Scott urges that the first *Allen* charge constituted reversible error because it was delivered following the jury's disclosure of its numerical division during deliberations ("deadlocked straight down the middle"). This argument is likewise unavailing. The trial court is not precluded from giving an otherwise proper *Allen* charge simply because the jury volunteered the nature and

---

represent the defendant. You are in there just to find the truth. You are not taking sides. There are no sides here. There is no this side is right, that side is right. There are no sides. As we slowly examine it, the evidence, and we just see if it measures up. If it does, we can do this. If it doesn't, we acquit. But, it is not something where you are taking a side.

You've all got to collectively look at this as a group and see whether or not the state has met its burden of proof, without having a perspective that it should be this way or it should be that way.

Please go back and deliberate further.

extent of its division. See *Sears v. State*, 270 Ga. 834, 838-839 (1) (514 SE2d 426) (1999), citing *Sanders v. United States*, 415 F2d 621, 631-632 (5th Cir. 1969).

7. Scott contends that his trial counsel was ineffective in multiple respects. But, in order to prevail on such claims, Scott must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Allen v. State*, 277 Ga. 502, 503 (3) (591 SE2d 784) (2004). If a defendant fails to meet this burden of proving either prong of the *Strickland* test, this "relieves the reviewing court of the need to address the other prong." *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004). Scott has failed to make the requisite showings.

(a) Scott submits that trial counsel's failure to object to the prosecutor's cited statements in closing argument constitutes ineffective assistance. But, as explained in Division 2, no legally improper statements were made and, accordingly, any objection advanced by trial counsel would not have prevailed. The failure to make a meritless objection is not evidence of ineffective assistance. *Moore v. State*, 278 Ga. 397, 400 (2) (e) (603 SE2d 228) (2004); *Hayes v. State*, 262 Ga. 881, 884 (3) (c) (426 SE2d 886) (1993).

(b) Scott next urges that trial counsel's failure to present testimony rebutting evidence of Scott's alleged incriminating statements to another amounted to ineffective assistance. However, during the hearing on Scott's motion for new trial, as amended, trial counsel explained that ultimately he did not subpoena the witness in question because on cross-examination of another witness he was able to elicit the same information, i.e., that such incriminating statements by Scott were never made. In general, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004). And, Scott has failed to demonstrate that trial counsel's choice of this trial strategy was not reasonable, as a matter of law, under the circumstances.

(c) Scott claims that trial counsel's failure to object to the immunity agreement going out with the jury constituted ineffective assistance. However, as already discussed, the presence of the agreement in the jury room, if indeed it did occur, was not reversible error. See Division 5, supra. Accordingly, Scott cannot meet his burden to show prejudice under the *Strickland* standard. See *Fosselman v. State*, 306 Ga. App. 84, 87 (2) (a) (701 SE2d 559) (2010).

(d) Scott submits that trial counsel's failure to interpose objections to either or both of the trial court's *Allen* charges amounted to

ineffective assistance. But, here again, the complaint is unavailing. As noted in Division 6, the *Allen* charges were not improper, and thus, they cannot form the basis of a claim of ineffective assistance of counsel. *Moore*, 278 Ga. at 400.

(e) Scott maintains that trial counsel's failure to object to the trial court's jury instructions constituted ineffective assistance. As discussed in Division 4, Scott has failed to demonstrate error in the trial court's jury instructions; therefore, there is no support for this claim of ineffectiveness of counsel. *Moore*, 278 Ga. at 400.

8. Finally, Scott argues that the trial court erred in denying his motion for new trial based upon the errors enumerated above. But, having failed to prevail on these claims, Scott has not demonstrated any error in the trial court's refusal to grant him a new trial.

*Judgments affirmed. All the Justices concur.*

DECIDED APRIL 24, 2012.

*Dwight L. Thomas*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.