295 Ga. 126
FINAL COPY

S14A0634.  GRANT v. THE STATE.

THOMPSON, Chief Justice.

Appellant Devon Grant was convicted of malice murder and possession of a firearm during the commission of a crime in connection with the shooting death of Kattilius ("Deebo") Middlebrooks.[1] He appeals from the denial of his motion for new trial, and for the reasons set forth below, we affirm.

1.  Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established that in December 2007, appellant and Middlebrooks were in an apartment at Brooklyn Homes in Brunswick where, for a two dollar entrance fee, patrons could gamble.  Appellant was accused of not paying the entrance fee and an argument ensued, during which Middlebrooks pushed his

---

[1] The crimes occurred on December 31, 2007.  Appellant was indicted by a Glynn County grand jury on March 19, 2008, on charges of murder, felony murder, voluntary manslaughter, and possession of a firearm during the commission of a crime.  Appellant was found guilty of all charges after a jury trial held on June 22, 24-26, 2009.  He was sentenced on June 26, 2009, to life imprisonment for the malice murder conviction and a consecutive five-year term of imprisonment on his conviction for possession of a firearm.  The remaining charges were merged or vacated by operation of law.  His motion for new trial was filed on July 17, 2009, amended on November 19, 2012, and denied on February 13, 2013.  A notice of appeal was filed on March 8, 2013.  The appeal was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

hand into appellant's face. As appellant left the apartment, he told Middlebrooks, "I'm going to kill you when I get back."

Two days later, appellant approached Middlebrooks as he played dice in the parking lot outside of the apartment complex and shot him in the back of the neck. A witness saw appellant walk toward Middlebrooks carrying a dark, semi-automatic pistol and heard appellant say, "I'm going to murk him," which in street parlance means, "I am going to kill him." As appellant walked away, he stated, "I told you I was going to kill him." Taliyah Thomas, appellant's cousin, testified that on the day of the shooting, appellant came home upset and looking for his mother. She heard appellant tell his mother that he shot someone named Deebo over a dice game. Middlebrooks was found lying in the parking lot, where he died from a gunshot wound.

We conclude the evidence was sufficient to enable the jury to find appellant guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends he was denied a fair trial because the State failed to produce during discovery a videotaped interview of Brittany Gardner in which Gardner stated that Ledell Ellis told her he shot Middlebrooks. See

2

Brady v. Maryland, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963). The State concedes that the videotaped interview, made during the investigation of a separate murder investigation, and a detective's related report were inadvertently not turned over to appellant before trial.

To prevail on a Brady claim, appellant must show that the State possessed evidence favorable to him, that he did not possess the evidence and could not obtain it himself with reasonable diligence, that the State suppressed the favorable evidence, and that, if the evidence had been disclosed to him, a reasonable probability exists that the outcome of the proceeding would have been different. See Kyles v. Whitley, 514 U. S. 419, 433-434 (115 SCt 1555, 131 LE2d 490) (1995); Blackshear v. State, 285 Ga. 619, 622 (680 SE2d 850) (2009). Pretermitting the issue of whether appellant met his burden with regard to the first three prongs of his Brady claim, we find no reversible error because appellant has failed to show a reasonable probability that earlier disclosure of the evidence would have produced a different outcome at trial. The defense theory at trial was to challenge the sufficiency of the State's evidence by focusing on the weaknesses in the State's case and appellant's statement to police that he was not in the Brunswick area when the shooting occurred.

3

Although Gardner's interview and related police report from the other shooting were not provided to defense counsel, counsel was given a copy of the entire police file in the Middlebrooks case, including a copy of Ellis' interview with police in which he denied shooting Middlebrooks, witness interviews identifying Ellis as a possible suspect, and documents reflecting the State's conclusion that Ellis was not involved in the Middlebrooks shooting. Defense counsel used this information at trial to question the lead detective about other suspects, and more specifically, about Ellis, to which the detective responded that Ellis was eliminated as a suspect when it was confirmed that he was not at the scene of the shooting. Although appellant argues that his trial strategy would have changed had he known about the Gardner interview, he presents no evidence demonstrating how his strategy would have changed or that this information would have led to other evidence favorable to his defense. In light of defense counsel's and the jury's knowledge that Ellis had been questioned and eliminated as a possible suspect, the testimony of an eyewitness who identified appellant as the person who shot Middlebrooks, and appellant's own admission that he shot someone named Deebo over a dice game, we conclude that there would not have been a reasonable probability of a different outcome

4

at trial if appellant had been given that information. See <u>Blackshear</u>, supra, 285 Ga. at 622; <u>Hester v. State</u>, 282 Ga. 239, 242-243 (647 SE2d 60) (2007).

3. Appellant's claim that the trial court erred by closing the courtroom to inquire whether the State had made a deal with a witness has not been preserved for appeal because no objection to the closure was made at trial. See <u>State v. Abernathy</u>, 289 Ga. 603, 611 (715 SE2d 48) (2011) (issue of closure may only be raised in context of an ineffective assistance of counsel claim when no objection to closure is made at trial).

4. During deliberations, the jury sent several notes to the trial court. In one, jurors asked to review a transcript of Taliyah Thomas' testimony. The trial court read the contents of this note to counsel and stated its intention not to give the transcript to the jury but instead to allow the jury to hear a replay of the testimony in the courtroom. After asking if this was agreeable to both parties and receiving input from both sides, the trial court responded, telling jurors they could rehear the witness' testimony in the courtroom. The jury then sent a note asking to also rehear investigator Scott Harrell's testimony. The trial judge followed the same procedure of reading the note to counsel and discussed the amount of time it would take to replay Harrell's testimony. The court informed

the parties that it intended to deny the requests to rehear the testimony of both witnesses because it feared jurors were going to want to rehear all of the evidence and possibly cause a mistrial. To avoid this outcome, the court told the jury that

> [t]he Court has decided not to go over again any . . . of the testimony. You must rely on your memory of the evidence as it was presented.

The jury then sent a final note to the trial court, asking:

> May we return to the courtroom to rehear the testimony and let the court reporter replay just Taliyah Thomas only, please, and thank you.

After reading this note in open court, and without eliciting a response from either party, the court, consistent with its original ruling, informed counsel it would respond by stating, "No." None of the exchanged notes were marked as exhibits, and they do not appear in the record.

Appellant argues that the trial court violated the requirements for jury communications laid out by this Court in Lowery v. State, 282 Ga. 68 (646 SE2d 67) (2007), by not marking the jury notes as exhibits and not providing him a full opportunity to respond to the jurors' requests to rehear testimony. In

6

<u>Lowery</u>, we stated:

> In an exercise of this Court's inherent power to maintain a court system capable of providing for the administration of justice in an orderly and efficient manner, we take this opportunity to require trial courts to have jurors' communications submitted to the court in writing; to mark the written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response; and to make counsel aware of the substance of the trial court's intended response in order that counsel may seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

Id. at 76.

It is undisputed in the present case that the jury notes were not marked as exhibits. Their contents, nevertheless, were read into the record and are not disputed by the parties in this appeal. Therefore, although the better practice would have been for the trial court to mark the notes as exhibits to be included with the appellate record, appellant has shown no harm from the trial court's failure to do so in this instance. See <u>Humphreys v. State</u>, 287 Ga. 63, 78 (694 SE2d 316) (2010) (defendant required to show harm as well as error where trial court did not read jury note to counsel verbatim). See also <u>Burtts v. State</u>, 269 Ga. 402, 403-404 (499 SE2d 326) (1998) (court's denial of jury request to rehear testimony without notifying defendant or counsel not prejudicial to

defendant).

We similarly find no reversible error in the trial court's handling of the juror's notes requesting to rehear the testimony of Thomas and Harrell. Contrary to appellant's assertion, the record shows that defense counsel was given ample opportunity to suggest an appropriate response to the jury's request to rehear Thomas' testimony and counsel, in fact, informed the court that he preferred the court tell jurors they could not rehear this evidence. With regard to the request for Harrell's testimony, the record demonstrates that defense counsel again had the opportunity to suggest an alternative response, but he made none. The record, therefore, does not support his assertion that he was denied an opportunity to suggest an alternative to either request. Moreover, this enumeration of error fails because appellant has not shown what different or further action he would have taken had the trial court followed more closely the procedures set out in Lowery. See Humphreys, supra, 287 Ga. at 78.

Appellant further argues that the trial court erred in refusing to allow the jury to rehear the requested testimony. It is within the trial court's discretion to decide whether to allow a jury at its own instigation to rehear evidence after

8

deliberations begin, and we find no abuse of that discretion in this appeal. See Burtts, supra, 269 Ga. at 403; Byrd v. State, 237 Ga. 781, 782 (1) (229 SE2d 631) (1976).

5. Appellant alleges on several grounds that trial counsel provided ineffective assistance, thereby entitling him to a new trial. In order to prevail on his claim of ineffective assistance, appellant must show both that counsel's performance was deficient and that the deficiency prejudiced him such that there is a reasonable probability that, but for the deficiency, the outcome of his trial would have been different. Strickland v. Washington, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." Young v. State, 292 Ga. 443, 445 (738 SE2d 575) (2013). Moreover,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Strickland, supra, 466 U. S. at 697. In reviewing a claim of ineffective

assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo. Sanford v. State, 287 Ga. 351, 356 (695 SE2d 579) (2010).

(a) Appellant contends trial counsel provided ineffective assistance by failing to raise a Batson challenge to the State's use of its peremptory strikes. See Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986). In support of his claim, he argues that because he is African-American and the jury was comprised of eleven white members and one African-American member, counsel was deficient for failing to make a Batson challenge.

"To succeed on [his] claim of ineffective assistance, [appellant] was required to show not only that trial counsel should have raised a Batson challenge, but also that the challenge would have been successful." Pierce v. State, 286 Ga. 194, 199 (686 SE2d 656) (2009). The burden of ensuring that the trial court had sufficient information before it to rule on a Batson challenge rested on appellant because the challenge is being raised in the context of a claim of ineffectiveness. See Stokes v. State, 289 Ga. 702, 704 (715 SE2d 81)

(2011); Pierce, supra, 286 Ga. at 200. The record demonstrates, however, that appellant failed to present to the trial court evidence of any kind pertaining to the State's use of its peremptory strikes. The only question asked of trial counsel at the motion for new trial hearing pertaining to the Batson issue was why counsel did not raise a Batson challenge, to which trial counsel responded, "I didn't . . . believe . . . that the strikes that were made were based on a race basis. . . . I didn't feel that the strikes that were being used by the State warranted that type of challenge." Appellant's conjecture, based solely on the ultimate composition of the jury, is, by itself, insufficient evidence of purposeful discriminatory intent. See Livingston v. State, 271 Ga. 714, 718 (524 SE2d 222) (1999) ("Even though 'circumstantial evidence of invidious intent may include proof of disproportionate impact,' numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent. [Cit.]"). See also Mitchell v. State, 275 Ga. 42, 45 (561 SE2d 803) (2002); Whitaker v. State, 269 Ga. 462, 464 (499 SE2d 888) (1998). Because appellant failed to carry his burden of establishing a prima facie case of purposeful discrimination, the trial

11

court did not err by denying his claim of ineffectiveness based on counsel's failure to raise a <u>Batson</u> challenge.

(b) Appellant's claim that trial counsel was ineffective by failing to object to the trial court's denial of his request to charge the jury on leniency in charges or sentence similarly fails. The trial court refused to give the requested leniency charge because no evidence of a grant of immunity or promise of leniency in exchange for a witness' testimony was presented at trial.

> A requested charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. If any portion of the request to charge fails in these requirements, denial of the request is proper.

(Punctuation, footnotes and emphasis omitted.) <u>Lane v. State</u>, 268 Ga. 678, 680 (492 SE2d 230) (1997). In the absence of any evidence supporting the requested charge, the trial court did not err by refusing to give it. See id.; <u>Stokes v. State</u>, 281 Ga. 875, 877 (644 SE2d 116) (2007); <u>Harris v. State</u>, 274 Ga. 422, 426 (554 SE2d 458) (2001). Trial counsel's failure to raise a meritless objection is not evidence of ineffective assistance. See <u>Hayes v. State</u>, 262 Ga. 881, 884-885 (426 SE2d 886) (1993).

Moreover, even assuming counsel was deficient in failing to object to the

denial of this request to charge, appellant has failed to establish ineffective assistance because the second prong of Strickland has not been met. Because there was no evidence of a deal or leniency toward a witness at trial, we cannot conclude there is a reasonable likelihood that the omission of the requested charge affected the outcome of the proceedings.

(c)  Finally, appellant argues that trial counsel provided ineffective assistance by failing to adequately prepare for trial, and more specifically, failing to interview potential witnesses. Even assuming, arguendo, that defense counsel's preparation constituted deficient performance, appellant has failed to show that counsel's performance prejudicially affected him.[2]  See Goodwin v. Cruz-Padillo, 265 Ga. 614, 614-615 (458 SE2d 623) (1995).  Appellant presented no evidence of what further investigation by counsel would have revealed and failed to identify any witness not interviewed by defense counsel whose testimony would have been favorable to appellant.  Absent a proffer of what evidence would have been discovered had other witnesses been

---

[2]  At the hearing on a motion for new trial, appellant's trial counsel testified that he spoke to appellant for many hours prior to trial, reviewed the State's files, and subpoenaed appellant's mother and Officer Wan Thorpe to testify at trial.  Counsel also testified that he attempted to contact other potential witnesses by telephone, but he was unable to reach them.

interviewed, appellant cannot show that the failure to interview them affected the outcome of trial. See id. Accordingly, his claim of ineffectiveness on this asserted ground fails.

Judgment affirmed. All the Justices concur.


Decided April 22, 2014.

Murder. Glynn Superior Court. Before Judge Lane.

Earle J. Duncan III, for appellant.

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General, for appellee.