**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 18, 2021**

# In the Court of Appeals of Georgia

A21A1013. TURKIA v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Jari Kalevi Turkia guilty of aggravated battery, battery, and simple assault as a lesser-included offense of aggravated assault. Following the denial of his motion for new trial, Turkia appeals. He argues that the trial court erred by addressing jury questions during deliberations without first soliciting his input and by failing to properly instruct the jury on the deadly weapon element of aggravated assault. We find no error and affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

*Zerbarini v. State*, 359 Ga. App. 153, 153-154 (855 SE2d 87) (2021) (citation omitted). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Viewed in that light, the record shows that in November 2016, Turkia knocked on the door of the victim's house. Believing Turkia was a salesperson, the victim opened the door. Turkia told the victim that he was looking for "the turkey house." The victim informed Turkia that he had the wrong house, and Turkia walked away.

A few minutes later, the victim again heard a knock at the door and saw that Turkia had returned. Believing Turkia needed directions, the victim again opened the door. "The minute" he opened the door, however, Turkia "pushed it open, full force," throwing the victim back a few feet. Turkia then held the victim tightly, tried to force him out of the house, and yelled, "You need to get out, this is my house, you need to get out," and "My wife owns this house." The victim tried to explain to Turkia that he owned the house, but Turkia "pushed [him] so hard [he] actually went through the drywall." The victim continued to try and reason with Turkia, but Turkia put the victim in a chokehold, causing the victim to collapse to his knees, and started suffocating him. Turkia then pushed the victim down into the floor and pressed his whole body weight onto the victim. The victim thought Turkia was going to kill him.

Ultimately, however, Turkia threw the victim out of the house, and he slammed and locked the door. As a result of Turkia's attack, the victim was bleeding, sustained a cracked rib, and had scratches, bruises, and red marks where Turkia choked him.

The victim called 911, and officers arrived on the scene shortly thereafter. The officers entered the house and arrested Turkia. A responding officer testified that Turkia looked like he had been in a fight, was flushed, and appeared to be under the influence of illegal drugs. An audio recording of the victim's 911 call was admitted at trial and played for the jury.

A jury found Turkia guilty of aggravated battery, battery, and simple assault as a lesser-included offense of aggravated assault. The trial court denied Turkia's motion for new trial, and Turkia filed this timely appeal.

1. Turkia first alleges that the trial court erred by failing to follow the procedure established by *Lowery v. State*, 282 Ga. 68, 72-76 (4) (b) (646 SE2d 67) (2007), for responding to a deliberating jury's questions. The record shows that the deliberating jury sent the trial court two notes. We find no reversible error in the trial court's response to either note.

The procedure for addressing a deliberating jury's question is well settled. A trial court is required

3

to have jurors' communications submitted to the court in writing; to mark [each] written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response; and to make counsel aware of the substance of the trial court's intended response in order that counsel may seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

*Lowery*, 282 Ga. at 76 (4) (b) (ii).

a. *The first note*. In the first note, the jury asked to review Turkia's and the victim's testimony, as well as the 911 call. The trial court informed the jury that testimony was not reduced to writing, and the jurors needed to rely on their notes and collective memory regarding any testimony. However, the trial court replayed the audio recording of the 911 call in the courtroom for the jury. The record indicates that the State and Turkia, who was proceeding pro se after firing his trial counsel mid-trial,[1] were present when the trial court addressed the jury's note and replayed the 911 tape. Neither party objected to the trial court's recharge.

---

[1] We note that pro se litigants are held to the same standard as attorneys. See *Lewis v. State*, 330 Ga. App. 650, 652 (768 SE2d 821) (2015) ("A party is not held to a different or more lenient standard merely because he elected to proceed pro se. One who knowingly elects to represent himself assumes full responsibility for complying with the substantive and procedural requirements of the law.") (citation and punctuation omitted). Turkia later obtained counsel to represent him at sentencing and for his motion for a new trial.

It is important to note that Turkia does not challenge the substance of the recharge given to the jury in response to this first note. In fact, his counsel at the motion for new trial hearing stated that the trial court's responses were "correct and accurate." Instead, Turkia claims that the trial court failed to follow the procedure prescribed by *Lowery* for handling jury notes. The State acknowledges that the trial court failed to follow the *Lowery* procedure with respect to the first note because "the trial court did not address the jury's questions with the prosecutor and [Turkia] prior to bringing the jury in and discussing the questions with the jury." Notwithstanding the trial court's failure to follow the proper procedure, Turkia "did not object at trial to the procedure that the court followed in handling the jury note here. [He] therefore waived this claim and is not entitled even to plain error review." *Suggs v. State*, 310 Ga. 762, 768 (6) (854 SE2d 674) (2021) (citation omitted).

b. *The second note*. The second note asked, "In order to meet the criteria of aggravated assault, would the defendant have to have intended (intent to) strangle?" and requested the full definition of aggravated assault. The State and Turkia were apprised of the jury's note, and both weighed in on the appropriate response to this note before the jury was brought to the courtroom. The trial court then recharged the jury with the full definition of aggravated assault, adjusted to the indictment and the

5

facts in the case, and gave an additional charge on criminal intent. Following the recharge, the trial court solicited objections, and Turkia stated that he had none.

As with the first note, Turkia does not challenge the substance of the recharge given to the jury in response to this second note, but, rather, claims again that the trial court failed to follow the procedure prescribed by *Lowery* for handling jury notes. However, even Turkia's motion for new trial counsel conceded that he did not "see much of a problem with the handling of the second question." Moreover, once again, Turkia "did not object at trial to the procedure that the court followed in handling the jury note here. [He] therefore waived this claim and is not entitled even to plain error review." *Suggs*, 310 Ga. at 768 (6) (citation omitted).

The trial court did not err in denying Turkia's motion for new trial based on the handling of the jury's notes.

2. Turkia next challenges the trial court's failure to charge the jury on its duty to determine whether an offensive weapon was used for purposes of the aggravated assault charge, citing suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §

2.20.23.[2] He asserts by omitting this charge, the trial court failed to instruct the jury as to a material element of the aggravated assault count. We find no error.

First and foremost, the jury found Turkia guilty of the lesser-included offense of - and the trial court sentenced him for - simple assault, not aggravated assault. Because the trial court did not enter a judgment of conviction and sentence as to aggravated assault, "any issues concerning those jury instructions are moot." *Allen v. State*, 296 Ga. 785, 791 (9) (770 SE2d 824) (2015). Accord *Parker v. State*, 282 Ga. 897, 899 (4) (655 SE2d 582) (2008) (enumerated errors concerning jury charge given in connection with felony murder and aggravated assault counts of an indictment were moot because trial court entered a judgment of conviction and sentence only on malice murder verdict).

Regardless, Turkia's claim nevertheless fails because "[s]uch an instruction was simply inapplicable to the case at bar." *Boyd v. State*, 289 Ga. App. 342, 345 (3) (656 SE2d 864) (2008). OCGA § 16-5-21 (a) provides for distinct methods of

---

[2] Pattern Jury Instruction 2.20.23 is labeled "Aggravated Assault; Deadly Weapon; Other Weapons." The instruction informs the jury that it "may or may not infer the (lethal) (serious injury-producing) character of the instrument in question from the nature and extent of the injury, if any, inflicted upon the person allegedly attacked" and that it must decide from the evidence in the case whether the implement used constituted a deadly weapon or a weapon likely to cause serious bodily injury.

committing aggravated assault. As applicable to Turkia's argument, OCGA § 16-5-21 (a) (2) states that a person commits the offense of aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury," whereas OCGA § 16-5-21 (a) (3) states that a person commits an ggravated assault when he assaults "[w]ith any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation." Here, the State alleged the latter method when it asserted in the indictment that Turkia assaulted the victim with his "hands and an arm . . . which when used offensively against a person are likely to and actually did result in strangulation." Thus, "[t]here was no need to instruct the jury on hands as deadly weapons, as that method of aggravated assault was [neither] alleged nor pursued by the State." *Boyd*, 289 Ga. App. at 345 (3).

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur*.

8