297 Ga. 132
FINAL COPY

S15A0612. TAYLOR v. THE STATE.
S15A0613. BESSENT v. THE STATE.


MELTON, Justice.

Following a joint trial, Roderick Taylor[1] and Abdul Bessent[2] were found

---

[1] On February 11, 2009, Taylor was indicted for conspiracy to commit armed robbery, conspiracy to possess cocaine, three counts of aggravated assault against separate victims, and three counts of felony murder against separate victims. Following a jury trial, Taylor was found guilty of all counts, except one count of aggravated assault and one count of felony murder, both regarding the same victim. The trial court ultimately sentenced Taylor to two consecutive life imprisonment terms for felony murder, two concurrent twenty year terms for aggravated assault, and merged the conspiracy charges for purposes of sentencing. On January 24, 2012, Taylor filed a motion for new trial, later amended on September 26, 2013 and October 28, 2013. The motion was denied on November 5, 2014, Taylor filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the April 2015 term of this Court.

[2] On February 11, 2009, Bessent was indicted for conspiracy to commit armed robbery, conspiracy to possess cocaine, three counts of aggravated assault against separate victims, and three counts of felony murder against separate victims. Following a jury trial, Bessent, like Taylor, was found guilty of all counts, except one count of aggravated assault and one count of felony murder, both regarding the same victim. The trial court sentenced Bessent to two consecutive life imprisonment terms for felony murder, two concurrent twenty year terms for aggravated assault, and merged the conspiracy charges for purposes of sentencing. On January 31, 2012, Bessent filed a motion for new

guilty for the felony murder of Michael Key and Phyllis Frazier, the aggravated assault of Roney Wilson and Meagan Molix, conspiracy to commit armed robbery, and conspiracy to possess cocaine. Both defendants appeal, contending, among other things, that the evidence was insufficient because the testimony of a co-defendant linking them to the crimes was not sufficiently corroborated. For the reasons set forth below, we affirm Taylor's convictions, but we must reverse the judgment in Bessent's case.

1. In the light most favorable to the verdict, the record shows that Robert Brown, a co-defendant of Bessent and Taylor, testified that, during the day on December 21, 2008, Brown and Taylor were playing football in Jacksonville, Florida. At some point, Taylor told Brown that Bessent "needed to get something up in Georgia." Brown understood this to be a trip to purchase drugs, and Brown agreed to drive Taylor, Bessent, and Joseph Stuckey from Florida to Kingsland, Georgia. According to Brown, Bessent used Stuckey's cell phone to make calls to Michael Key, the dealer, and told Brown, who was

---

trial, later amended on December 4, 2013. The motion was denied on October 15, 2014. Taylor filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the April 2015 term of this Court.

driving the vehicle, how to get to Key's apartment. Phone records later obtained by police proved that phone calls were made from Stuckey's cell phone to Key's cell phone at 5:54 p.m., 6:16 p.m., and 6:32 p.m. A call was also made from Key's cell phone to Stuckey's cell phone at 6:37 p.m., and one last call from Stuckey's cell phone to Key's cell phone at 6:39 p.m., shortly before the shootings in Key's apartment.

At the apartment complex, again according to Brown, Bessent, Taylor, and Stuckey, who had an AK-47 assault rifle with him, went inside. After a few minutes, Brown, who stayed in the car, heard shots fired, and he then saw Bessent, Stuckey, and Taylor run out of the apartment. At that point, a pickup truck had pulled up next to Brown's vehicle in the parking lot, and Brown testified that, when Stuckey saw the truck, Stuckey began shooting at it. Jermaine Banks, who was in the truck, testified that, when he and Jamie Riddle pulled into the parking lot, Banks heard gunshots and then noticed someone running down from Key's apartment with a gun. Banks then saw two other individuals run down from Key's apartment.

Meagan Molix was roommates with Key, Frazier, and Wilson. On the date in question, Molix and Wilson were in bed in their bedroom and heard

voices in the hallway. At that time, Key and Frazier were in the kitchen. Molix recounted that a short male with a gun opened the bedroom door and turned on the light. The short male entered the room with a taller male. According to Molix, the shorter male kept asking where "it" was, while the taller one searched the closet and around the foot of the bed. At trial, Molix identified Taylor as the taller guy, but, on cross-examination, she expressed considerable uncertainty about the identification.[3] The two males then left the room, and Molix observed the taller one start searching inside the hallway closet. Molix then heard another voice, belonging to a third person, ask Key, "Where's it at . . . . Where's the drugs at," and she heard Key say he did not have anything. At this point, she heard shots fired and called 911.

Medical personnel and law enforcement officers were dispatched to the apartment around 6:45 p.m. Upon arrival, they found the deceased bodies of Key, Frazier, and Jamie Riddle, the driver of the truck who had pulled up next to Brown in the parking lot. They also identified Banks, a passenger in Riddle's truck, who had been shot in the left thigh. Two different types of shell casings

---

[3] Molix had not been able to identify any of the assailants prior to trial.

were discovered inside the apartment, but only Wolf brand casings suitable for an AK-47 were found outside. One unused Wolf brand bullet was later found in Stuckey's home.

Brown testified that, after the shooting, he drove back to Jacksonville and dropped Bessent, Taylor, and Stuckey off at Stuckey's house. Shajuana Jones, Stuckey's girlfriend at the time of the shooting, testified that, on the evening in question, she witnessed Stuckey being dropped off with Taylor. She also saw Bessent move into the front seat from the back at the same time.

In addition to this evidence, certain lyrics from a rap song written by Taylor in his jail cell were admitted. These lyrics state:

> [M]E AND STUCKEY GOT THE CHOPPAS, ANY REASON WE SPRAYIN', AND THAT'S WHEN A LOT OF SH-T CHANGE; AND [M]E AND LIL STUCKEY HAD ANGER BUILT UP IN US. NOW ME, HIM, CODEFENDANTS.

There was evidence presented that "choppa" is a street term referring to an AK-47 rifle.

2. Both Taylor and Bessent argue that the evidence was insufficient to support the verdict because Brown's testimony was never corroborated and

there was no other evidence that they participated in the crimes. Under former

OCGA § 24-4-8, "[in] felony cases where the only witness is an accomplice,

the testimony of a single witness is not sufficient. Nevertheless, corroborating

circumstances may dispense with the necessity for the testimony of a second

witness. . . ."[4] Furthermore,

> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted.) Threatt v. State, 293 Ga. 549, 551 (1) (748

SE2d 400) (2013). "[C]orroboration of only the chronology and details of the

crimes is not sufficient, and there must be some independent evidence tending

to show that the defendant himself was a participant in the crimes. West v.

State, 232 Ga. 861 (2) (209 SE2d 195) (1974)." Crawford v. State, 294 Ga. 898,

901 (1) (757 SE2d 102) (2014).

---

[4] Georgia's new Evidence Code, effective for trials conducted on or after January 1, 2013, provides that to sustain a felony conviction, the testimony of an accomplice must be corroborated. See OCGA § 24-14-8.

6

Brown's testimony that Taylor participated in the crimes was corroborated both by Molix's identification of Taylor at trial as well as the rap lyrics Taylor composed in his jail cell which referenced the use of an AK-47 that resulted in becoming Stuckey's co-defendant. We note that Taylor accurately points out the equivocal nature of Molix's identification testimony; however, the weight to be given to this equivocal testimony was a matter for the jury to decide. See Johnson v. State, 294 Ga. 86 (4) (750 SE2d 347) (2013). The evidence, therefore, was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Taylor was guilty of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Brown's testimony that Bessent participated in the crimes was corroborated only by Jones's testimony that she saw Bessent in Brown's vehicle with Stuckey and Taylor on the evening after the murder. This evidence, however, does nothing to indicate that Bessent actually *participated* in the crimes. At best, it merely shows that Bessent was with his co-defendants in Florida after the crime was committed. As a result, Brown's testimony was not sufficiently corroborated with regard to Bessent, and the evidence was

7

insufficient to enable the jury to find Bessent guilty of the crimes for which he was convicted. Id. The fact that a number of phone calls were made from Stuckey's phone prior to the murders does not change this result, as there is no evidence corroborating Brown's testimony that Bessent actually made these phone calls using Stuckey's phone.[5] Bessent's convictions must be reversed.

3. Taylor contends that the trial court erred by allowing the admission of redacted rap lyrics found in his jail cell, arguing that the lyrics were irrelevant and unduly prejudicial. We disagree. The exclusion of evidence that "is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." O'Neal v. State, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985). In this case, the rap lyrics explicitly referenced the use of an AK-47 resulting in Taylor becoming a co-defendant with Stuckey. These lyrics, then, were relevant to the crimes for which Taylor was charged on their face. The trial court did not abuse its discretion by admitting this relevant evidence. See, e.g., Castillo v. State,

_____

[5] Crawford v. State, 294 Ga. 898, 901 (1) (757 SE2d 102) (2014), relied on by the State, is distinguishable from the case at hand. In Crawford, cell phone records regarding the *defendant's* phone were used to corroborate the testimony of a co-defendant.

281 Ga. 579 (7) (a) (642 SE2d 8) (2007).

4. Given the fact that his convictions must be reversed due to the insufficiency of the evidence, we need not reach Bessent's remaining enumerations of error.

Judgment affirmed in Case No. S15A0612. Judgment reversed in Case No. S15A0613. All the Justices concur.

Decided May 11, 2015.

Murder. Camden Superior Court. Before Judge Harrison.

Jimmonique R. S. Rodgers, Michael W. Tarleton, for appellant (case no. S15A0612).

Clare Nolan, for appellant (case no. S15A0613).

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Rocky L. Bridges, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General, for appellee.