**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 18, 2016**

# In the Court of Appeals of Georgia

A16A1103. DANIELS v. THE STATE.

McMILLIAN, Judge.

Marquise Markel Daniels was convicted as a party to the crime of armed robbery, aggravated assault, and possession of a firearm during the commission of a felony in connection with the armed robbery of a convenience store. He appeals following the denial of his motion for new trial, as amended, arguing in his sole enumeration of error that the evidence was insufficient to sustain his convictions. As more fully set forth below, we now affirm.

Properly construed to support the jury's verdict, *Brown v. State*, 291 Ga. 750, 752 (1) (733 SE2d 300) (2012), Quincy Driskell, Daniels' alleged accomplice, testified that on October 8, 2013, Daniels conceived a plan to rob Nick & Sonny's convenience store, which Daniels believed would be the "easiest target" because he

was a "regular" customer in the store and knew the person that worked there. Driskell said the plan was for Daniels to buy a "single" cigarette, and when the clerk opened the cash register, Driskell would draw a gun on the clerk and reach in and grab money out of the register.[1]

Driskell testified that they first went to Daniels' mother's house, which was near the store, and then they walked to the store from there. He said as they walked to the store Daniels handed him a mask and a gun to use during the robbery. As seen from the store surveillance video, which was played for the jury at trial, Daniels entered the store first and then Driskell walked in almost immediately behind him, positioning himself near the open side of the counter where the cash register was located while Daniels walked around to the front of the counter. The store clerk, who was standing in the back of the store adjusting merchandise when Daniels and Driskell entered, walked up the aisle past Driskell, who turned his face away from the clerk. After the clerk walked behind the counter, Daniels held up one finger to indicate he wanted one cigarette, and the clerk handed him a cigarette and picked up

---

[1] Driskell testified that Daniels wanted Driskell to rob the store because Driskell owed Daniels rent money, but Daniels, his wife, and his mother denied that Driskell lived with Daniels. A forensic psychologist testified that Driskell had an IQ of 71 and had been diagnosed as borderline intellectual functioning, and his aunt testified that he was easily influenced and likely to do what others told him to do.

his money off the counter. The clerk then moved back to the cash register and opened it, at which point Driskell, who had placed a mask over his face, walked behind the counter, displayed a gun, and reached toward the register. As shown on the video, Daniels remained leaning on the counter watching from just a few feet away as Driskell brandished the gun and reached his hand toward the register. Daniels then held up his hands and ran out of the store, and Driskell finished grabbing the money and ran out of the store about six seconds later. A witness who lived across from the convenience store testified that he observed the men run out of the store, and that he saw the first man run out and then another man run out behind him "[a]t the most" ten seconds later, and that the men were running "one behind the other," and in the same direction.[2]

According to Driskell, Daniels and he ran to the woods, where he gave Daniels the money and Daniels covered the gun and mask with leaves and "stuff,"[3] and then

---

[2] When defense counsel attempted to elicit testimony on cross examination that the second man was not "right behind" the first man, the witness responded, "[n]o, it was right behind each other like – you know, like they came out at the same time or nothing[sic]."

[3] The gun and mask were never recovered. Driskell testified that he did not tell police about leaving the gun and mask in the woods when he was arrested several months after the crime. Daniels was not arrested until almost five months after the crime, and the lead investigator testified he did not search Daniels' home.

they went together to Daniels' mother's house. Daniels went inside to ask his mother to give him a ride home, and his mother testified at trial that he told her then that there had been a robbery at the store. Daniels' mother testified that she did not see Driskell inside her house, but when she went outside to give Daniels a ride, Daniels and Driskell were on the porch together and that Driskell, whom she knew from the neighborhood, asked her if she would also give him a ride. Daniels' mother testified she dropped off both Driskell and her son at a stop sign located at Maple Heights, where she said Daniels lived with his wife.

Several days after the robbery, Daniels' mother went to the police station and viewed the surveillance video, explaining that she came forward because she heard there was a reward and wanted to help out the convenience store clerk, who was her friend. The mother identified Driskell as the robber but did not initially tell police that her son was the other person in the video. However, when police began investigating Driskell, they saw that Daniels and he were Facebook friends, and they called Daniels' mother and asked her to bring him in so they could talk to him. Police then questioned Daniels, and that interview was admitted into evidence and played for the jury at trial. For the entire first hour of the interview, Daniels steadfastly and vehemently denied that he knew who robbed the store and that he knew anyone

4

named Quincy Driskell. However, Daniels eventually admitted that he knew Driskell, although he continued to deny any involvement in the robbery.

Police stopped their interview with Daniels and questioned his mother again about why she did not tell them that her son was the other person shown on the video. During that second interview, the mother also told police for the first time that Driskell had come to her house after the robbery and that she had given Driskell and Daniels a ride to Maple Heights. Police then talked to Daniels again, and he admitted that Driskell was at his mother's house that night and that she gave them both a ride and dropped them off together at Maple Heights. However, Daniels continued to steadfastly deny to police that he had anything to do with the robbery.

Daniels testified in his own defense at trial and admitted that he had known Driskell since approximately 2012. He said he spoke to Driskell as he walked by him on the way into the store, but maintained that he was not involved in the robbery and said he had no idea Driskell was going to rob the store. He also testified he did not know why Driskell went to his mother's house after the robbery, except to opine that maybe Driskell wanted to implicate them in the crime as retribution because Daniels' mother had rebuffed Driskell's romantic advances. When asked why he lied to police for over an hour during his interview, he explained that he did not want to be a snitch

5

and that he was scared, but he stated that he decided to tell the truth because he did not want to get into trouble for something he did not do. Based on this and other evidence presented at trial, the jury found Daniels guilty as a party to the crime of armed robbery, aggravated assault, and possession of a firearm during the commission of a felony.

Daniels' sole contention on appeal is that the accomplice's testimony was not sufficiently corroborated. It is true that under Georgia law, a felony conviction cannot be based solely on the uncorroborated testimony of an accomplice. *Cisneros v. State*, ___ Ga. ___ (1) (b) (Case No. S16G0443, decided October 17, 2016); OCGA § 24-14-8.[4] But "sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, *or lead to the inference that he is guilty*." (Punctuation omitted; emphasis supplied.) *Threatt v. State*, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013). And "evidence of the defendant's conduct before and after the crime may give rise to an inference that he participated in the crime." *Cisneros*, ___ Ga. at ___ (1)

_____

[4] This section replaced OCGA § 24-4-8 and has been given the same meaning. *Cisneros*, ___ Ga. at ___ (1) (b).

6

(b). See *Stanbury v. State*, 299 Ga. 125, 128 (786 SE2d 672) (2016); *Mitchell v. State*, 279 Ga. 158, 159-60 (1) (611 SE2d 15) (2005). Further, our law does not require corroboration of every particular of an accomplice's testimony or that the corroborating evidence match the testimony of the accomplice in every detail. E.g., *Threat*, 293 Ga. at 552 (1); *Mitchell*, 279 Ga. at 159 (1).

Here, Daniels and Driskell entered the store together; Daniels watched as Driskell brandished a gun at the clerk and reached toward the cash drawer; a witness observed the accomplice and Daniels come running out of the store within seconds of each other and continue running in the same direction; they both ran to Daniels' mother's house where they caught a ride together; and they both exited Daniels' mother's car at the same location. In addition to the inference the jury was allowed to draw from this evidence, the jury was further authorized to consider that Daniels lied to police for over an hour about knowing Driskell and being able to identity the robber, and even after admitting knowing it was Driskell who robbed the store, he continued to withhold the fact that he had seen Driskell again after the crime. E.g., *Threatt*, 293 Ga. at 551 (1) (defendant's "demonstrably false statements" to police were corroborating).

It was for the jury to decide the credibility of the witnesses and whether the accomplice's testimony was sufficiently corroborated, and, as noted above, it was not necessary that each particular of the accomplice's testimony was corroborated or that the jury determine that the corroborating evidence standing alone was sufficient to convict Daniels. *Cisneros*, ___ Ga. at ___ (1) (b) (even modus operandi evidence may, by itself, be sufficient to corroborate an accomplice's testimony identifying defendant as a participant in the crime); *Rutledge v. State*, 298 Ga. 37, 40 (1) (779 SE2d 275) (2015) (reiterating that slight evidence identifying accused as a participant in the crime is all that is necessary). Our review shows that the evidence outlined above and other evidence presented at trial was sufficient to authorize Daniels' conviction as a party to the crimes charged. Accordingly, he is not entitled to reversal on this basis.

*Judgment affirmed. Ellington, P. J., Dillard, Branch, Mercier and Peterson, JJ., concur. Miller, P. J., Phipps, P. J., and McFadden, J., dissent.*

A16A1103. DANIELS v. THE STATE.

MILLER, Presiding Judge, dissenting.

The right to a trial by jury is a hallmark of our criminal justice system in America. For this reason, we are reluctant to interfere with a jury's verdict except in those limited circumstances in which the State has not proven the elements of the offenses for which the defendant is charged. Here, Daniels was charged as a party to a crime, and it is well-established under Georgia law that a defendant cannot be convicted as a party to a crime based solely on the uncorroborated testimony of an accomplice. *Threatt v. The State*, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013). After having thoroughly reviewed the record in this case, it is clear that the State has not presented *any* independent evidence to corroborate the accomplice's testimony that Daniels orchestrated, assisted, or otherwise participated in the robbery. Mere presence alone is not sufficient. Therefore, under the current status of the law, the question of Daniels's guilt should not have been submitted to the jury. Accordingly, I respectfully dissent.

A person may be charged as a party to the crime "only if he . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (4); see also *Hunt v. State*, 244 Ga. App. 578, 580 (536 SE2d 251) (2000). Moreover,

> [t]o sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and *independently* of the testimony of the accomplice, *directly connect* the defendant with the crime or lead to the inference that he is guilty.

(Footnote omitted; emphasis supplied.) *Chandler v. State*, 311 Ga. App. 86, 87 (1) (714 SE2d 597) (2011). Although corroborating evidence "may be circumstantial and it may be slight," evidence that only corroborates the time line and details of the crimes is not sufficient. *Taylor v. State*, 297 Ga. 132, 134 (2) (772 SE2d 630) (2015); *Shumake v. State*, 159 Ga. App. 142 (1) (a) (282 SE2d 756) (1981).

The evidence here showed that Daniels entered the convenience store to buy one cigarette. About 10 seconds later, Driskell entered. While Daniels and the cashier were talking at the register, Driskell pulled his mask over his face, pulled out a gun, and pointed it at the cashier. Daniels put his hands in the air and ran from the store. Driskell followed, about seven seconds later. Notably, an eyewitness who observed

2

the men running down the street testified that they did not appear to be running together. When police interviewed Daniels, they did not consider him to be a suspect, and in fact did not consider him to be a suspect even after he made inconsistent statements about knowing Driskell during the interview.

Driskell's testimony was *the only evidence* that Daniels planned the robbery, provided the weapon and mask, or disposed of those items in the woods after the robbery. At most, the independent evidence corroborates the chronology and details of the crimes Driskell committed, but none of it shows *Daniels's* participation as opposed to his mere presence.[1] *Taylor*, supra, 297 Ga. at 134 (2); see also *Nix v. State*, 133 Ga. App. 417, 419 (211 SE2d 26) (1974) (defendant's actions corroborated accomplice's testimony as to chronology of events, but did not directly or indirectly substantiate defendant's guilt).

Here, there is no independent corroborating evidence and therefore the issue of Daniels's guilt should not have been presented to a jury.[2] *Hill v. State*, 236 Ga.

---

[1] It is possible that Daniels's conduct after the robbery would have supported a conviction as an accomplice after the fact, but he was not charged with that crime.

[2] The Supreme Court of Georgia's recent decision in *Cisneros v. State*, __ Ga. __ (Case No. S16G0443, decided October 17, 2016), does not require a different conclusion. In *Cisneros*, independent evidence from the modus operandi of several burglaries, as well as testimony from the others involved, corroborated the

3

831, 833 (225 SE2d 281) (1976) (reversing convictions that were based on accomplice's testimony because "corroborating evidence must do more than merely cast on the defendant a grave suspicion of guilt.") (citations omitted); *Gilmore v. State*, 315 Ga. App. 85, 91-92 (1) (d) (726 SE2d 584) (2012) (co-defendant's uncorroborated testimony that defendant was involved in home invasions was insufficient to sustain conviction); *Black v. State*, 155 Ga. App. 798 (272 SE2d 762) (1980) (reversing conviction where no evidence corroborated accomplice's testimony that defendant was involved in burglary). Instead, in this case, the trial court should have granted Daniels's motion for a directed verdict when it was clear at the close of the State's case that there was no independent corroborating evidence to establish that Daniels was a party to the crimes.

Accordingly, this Court should reverse Daniels's convictions. I am authorized to state that Presiding Judge Phipps and Judge McFadden join in this dissent.

---

accomplice's testimony. Here there is no such independent corroborating evidence.

4