309 Ga. 463
FINAL COPY

S20A0668.    STYLES v. THE STATE.

ELLINGTON, Justice.

A Brooks County jury found Michael Styles guilty of felony murder and other crimes in connection with the shooting death of Alberto Lumens and the armed robbery of Juan Lumens Garcia.[1] Styles contends that the evidence was insufficient to support his

---

[1] Styles and his brother, Derrick Styles, were indicted by a Brooks County grand jury on April 7, 2010, for burglary (Count 1); the felony murder of Lumens, predicated on armed robbery (Count 2); the armed robbery of Lumens (Count 4); the armed robbery of Garcia (Count 6); and three counts of possession of a firearm during the commission of a felony (Counts 3, 5, and 7). (The indictment shows Garcia's surname as "Zelaya," which appears to be a misnomer.) At a joint trial on May 16 through 18, 2011, the jury found Styles and his brother guilty on all counts. On July 12, 2011, the court sentenced Styles to 20 years' imprisonment for burglary (Count 1); life imprisonment, consecutive to Count 1, for the felony murder of Lumens (Count 2); five years' imprisonment, consecutive to Count 2, for possession of a firearm during the commission of a felony (Count 3); life imprisonment, consecutive to Count 3, for the armed robbery of Garcia (Count 6); and five years' imprisonment, consecutive to Count 6, for possession of a firearm during the commission of a felony (Count 7). The court merged Count 4 with Count 2, and Count 5 with Count 3. Styles filed a motion for a new trial on July 13, 2011. Through new counsel, he amended the motion on May 2, 2018. Following a hearing, the trial court denied the motion for a new trial on August 21, 2018. Styles filed a notice of appeal on August 27, 2018. The appeal was docketed to the April 2020 term of this Court and the case was submitted for decision on the briefs.

convictions, that the trial court erred in charging the jury and in handling a communication from the jury, that the prosecutor improperly expressed personal opinions during the trial, and that defense counsel rendered him ineffective assistance. Because these claims of error are without merit, we affirm.

In *Styles v. State*, 308 Ga. 624, 625-627 (842 SE2d 869) (2020), in which this Court affirmed the convictions of Styles' brother and co-defendant, Derrick, we set forth the following facts:

> Viewed in the light most favorable to the jury's verdicts, the record shows the following. Lumens and his son, Cesar Lumens, lived with Garcia in Garcia's Brooks County home. On the evening of July 25, 2009, the men had retired to their bedrooms after an afternoon of drinking beer. Garcia testified that he heard the front door open followed by the sounds of people talking. He left his bedroom to investigate and saw three people, two men and one woman, standing by the front door. Garcia recognized one of the men as "Nino," whom he later identified as Cornell Stephens from a photographic lineup. When Garcia walked toward the front door, the man with Stephens (later identified as [Derrick]) pointed a gun at Garcia and demanded money. Garcia refused, and [Derrick] struck him on the head with the gun. [Derrick] forced Garcia to return to his bedroom. Once there, [Derrick] rummaged through Garcia's belongings; he took a photo album, a ring, a necklace, and Garcia's wallet, which contained $400. When [Derrick] turned his

back to Garcia, Garcia pushed him through the doorway and closed the door. [Derrick] fired twice at the door. Because Garcia had moved away from the door, the bullets did not strike him. When Garcia felt sure that the robbers had left, he looked for Lumens. He found Lumens lying on the bathroom floor, dead from a gunshot wound. Also, the $5,000 in cash that Lumens had kept in his bedroom was gone.

On July 27, Essie Hollis, the woman who entered the house with [Derrick] and Stephens, called the police and agreed to be interviewed by GBI Agent Michael Callahan. Hollis told Agent Callahan, and also testified at trial, that she ran into Styles and his brothers, [Derrick] and Jonathan, at a gas station on the night of the murder. [Derrick] asked her if she wanted to "go make some money tricking." Hollis agreed and got into the car with Styles, his brothers, and a fourth man, Lamar Jones. They stopped to pick up Stephens, and they dropped Jonathan off. Thereafter, [Derrick] discussed with Hollis, Stephens, Jones, and his brother, [Styles], a plan to rob the people at Garcia's house. They agreed that Stephens would take Hollis to Garcia's house, Hollis would have sex with the occupants of the house, find out where the money was kept, and then report back. According to Hollis, when they arrived at Garcia's home, she and Stephens executed the plan as instructed. After having sex with Lumens, Hollis went back outside, allegedly to get another condom, and told [Derrick] where he could find money inside the house. Stephens, Jones, [Derrick], and [Styles] walked toward the house while Hollis got into the car. Hollis said she heard gunshots. She said that [Styles] got in the driver's side of the car. Moments later, she saw [Derrick] and Jones run from the house toward Stephens and the car. Once everyone was in the car, [Styles] sped off.

Hollis testified that [Derrick], who had been using

cocaine all evening, was acting "hyped up and crazy." [Derrick] told her that she had "better not run (her) mouth" and that he ought to shoot her so that she could not talk. Hollis testified that [Derrick] was concerned that he had dropped his gun somewhere near the house and that he needed to go back and get it. [Derrick] offered Hollis a stolen cell phone, which she declined. Hollis also testified that a surveillance video recording that the police had recovered from the gas station showed her interacting with [the Styles brothers] and Jones.[2] Hollis was arrested on July 30, for her role in the crimes, and she later pleaded guilty to robbery.[3]

Stephens also pleaded guilty to robbery and testified at trial. Stephens testified that [Derrick, Styles] and Jones had asked him to pimp Hollis to Lumens and Garcia. Stephens testified that, after [Derrick] picked him up, they all went to Garcia's home. On the way there, they talked about committing a robbery. Stephens went inside the house with Hollis. After Hollis had sex with Lumens, she went back outside. Shortly thereafter, Stephens saw [Derrick] and Jones enter the home; [Derrick] had a gun. Stephens heard gunfire coming from inside the house and fled to the car. When he returned to the car, [Styles] was already in the driver's seat, and Hollis was in the back seat. Stephens testified that he heard two or three more shots from the house, and then Jones and [Derrick] returned to the car. The five drove off. When they arrived

---

[2] Additionally, after her arrest, Hollis agreed to assist the GBI by calling Styles and Derrick. These recorded telephone conversations were admitted in evidence.

[3] At the time of trial, Hollis, Stephens, and Jones had each pleaded guilty to robbery for their part in these crimes, but they had yet to be sentenced. The record indicates that the State had made no promises to them other than to inform the trial court at sentencing whether they had been cooperating witnesses.

at [Derrick's] home, Jones took out a wallet and gave Hollis some money. Thereafter, Stephens drove [Derrick] back to Garcia's house to retrieve the gun; after they found it, they drove to Valdosta. After the crimes, [Derrick and Styles] asked Stephens where Hollis could be found. Stephens decided to go to the police because [Derrick] had previously made threats about killing Hollis. On July 28, Stephens spoke to Agent Callahan about the crimes.

Lamar Jones also pleaded guilty to robbery and later testified at trial. Jones gave testimony corroborating Hollis' and Stephens' account of the crimes. He also testified that Hollis told them that Lumens kept his money in a dresser drawer. When he went inside the house with [Derrick], he saw [Derrick] approach Lumens, who was standing in his bathroom, wrapped in a towel. [Derrick] began yelling at Lumens, demanding his money. Jones said he did not see [Derrick] shoot Lumens, but he did see him shooting at Garcia's bedroom door. Jones ran outside to the car, followed by [Derrick], and the group sped away. Jones also testified that he had participated in another armed robbery earlier the same day with [Derrick] and one of his other brothers, Dominique Styles.

During their investigation of the crimes, the police found a photograph taken from Lumens' home in [Derrick's] car. The police also found two .380 bullets and five .380 shell casings in Lumens' home. One of the shell casings was found on the bathroom floor. Two bullet holes were found in Garcia's door. A bullet was recovered from the door frame and another was recovered from Garcia's bedroom. A third bullet was recovered from Lumens' body. The ballistics expert who examined the bullets and shell casings testified that the five shell casings had markings indicating that they had been ejected from the same gun. The bullets had matching lands and grooves that also indicated that they had been fired from the same

gun. However, without a gun to test the bullets and casings against, he was unable to determine if bullets had been fired from the same gun that had ejected the shell casings. The medical examiner testified that Lumens' cause of death was a gunshot wound to the chest.

[Styles] turned himself in on August 25, and [Derrick] was arrested in Texas on September 22, 2009.

1. Styles contends the evidence was insufficient to show that he participated in Derrick's crimes. He argues that the testimony of his co-defendants, Hollis, Jones, and Stephens, was uncorroborated accomplice testimony and therefore insufficient to support a finding of guilt beyond a reasonable doubt. We disagree.

Under former OCGA § 24-4-8, "[in] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness[.]"[4]

---

[4] This case was tried under the old Evidence Code, see Ga. L. 2011, p. 99, § 101, and for that reason, we cite former OCGA § 24-4-8. We note, however, that the provisions of former OCGA § 24-4-8 were carried forward into the current Evidence Code and now can be found at OCGA § 24-14-8. And cases — like this one — that have been decided under former OCGA § 24-4-8 may continue to be applied in cases applying the current OCGA § 24-14-8, "because the statutory provision on corroboration under the old Evidence Code was carried over into the [current] Evidence Code and has no federal corollary." *Foster v. State*, 304 Ga. 624, 627 n.6 (820 SE2d 723) (2018).

Furthermore,

> sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

(Citations and punctuation omitted.) *Taylor v. State*, 297 Ga. 132, 134 (2) (772 SE2d 630) (2015). "Corroboration of only the chronology and details of the crimes is not sufficient, and there must be some independent evidence tending to show that the defendant himself was a participant in the crimes." (Citations and punctuation omitted.) Id.

In this case, three accomplices testified, corroborating each other's testimony. See *Lawrence v. State*, 286 Ga. 533 (1) (690 SE2d 801) (2010) ("While a defendant may not be convicted on the uncorroborated testimony of a single accomplice, it is well established that the testimony of a second accomplice is sufficient to corroborate that of the first." (citation and punctuation omitted)).

Further, each of these witnesses testified that Styles participated in the crimes by helping to plan them and by acting as the get-away driver. In addition, non-testimonial evidence corroborated the testimony of the accomplices, including the gas-station video recording showing them together before the crimes and evidence of phone conversations between Styles and Hollis after the crimes. Thus, the record shows that the testimony of Styles' accomplices was amply corroborated. The record also shows that the evidence was sufficient to enable a rational trier of fact to find Styles guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (defining parties to a crime); *Taylor*, 297 Ga. at 134 (2).

2. Styles contends the trial court erred in refusing to give his written request to charge the jury on robbery as a lesser included offense of armed robbery. Styles concedes that, because he did not object to the trial court's ruling, this claim of error may be reviewed for plain error only. See OCGA § 17-8-58 (b); *Blackwell v. State*, 302

Ga. 820, 822 (2) (809 SE2d 727) (2018). Review for plain error means that we will reverse the trial court "only if there was an instructional error that was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Citation and punctuation omitted) *Blackwell*, 302 Ga. at 823 (2). Styles has "the burden of showing a clear or obvious error and further making an affirmative showing that the error probably did affect the outcome below." (Citation omitted.) Id.

The record shows that the trial court declined to give Styles' written request to charge the jury on robbery because it was not adjusted to the facts.[5] "A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." (Citation and punctuation omitted.) *Rogers v. State*, 289 Ga. 675, 677 (2) (715

---

[5] Styles asked the court to charge the jury on robbery by use of force, intimidation, or sudden snatching as defined in OCGA § 16-8-40 (a). Styles did not specify at trial or in his appellate brief what evidence adduced at trial would have supported the requested charge.

SE2d 68) (2011). A request to charge must be "legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence." (Citation and punctuation omitted.) *Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015). Further, "[w]hen the evidence shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense." *Jenkins v. State*, 270 Ga. 607, 608 (2) (c) (512 SE2d 269) (1999). Whether the defendant has presented sufficient evidence to warrant a requested charge is a question of law. See *Ware v. State*, 303 Ga. 847, 850 (III) (815 SE2d 837) (2018).

In this case, the uncontradicted evidence shows that Derrick committed an armed robbery using a gun and that Styles was a party to that crime. Because the evidence shows only the completion of the greater offense of armed robbery, the trial court did not err in refusing to give the requested, lesser included robbery charge. See *Jenkins*, 270 Ga. at 608 (2) (c). See also *Jordan v. State*, 239 Ga. 526, 527 (2) (238 SE2d 69) (1977) ("The uncontradicted evidence showed completion of the greater offense, an armed robbery, so that the

charge on the lesser offense was not required."). That Hollis, Stephens, and Jones were allowed to plead guilty to a lesser charge of robbery in exchange for their agreement to testify is not "'evidence' as to the underlying facts so as to support a jury charge on the lesser offense, and proof of such factual issues must be established at trial." *Harrison v. State*, 252 Ga. App. 833 (557 SE2d 447) (2001).

3. Styles contends the trial court committed reversible error by failing to properly follow the requirements for handling a communication from the jury during its deliberations. Specifically, Styles asserts that the trial court did not mark the jury's note as a court exhibit or give counsel a full opportunity to respond to the note.

In *Lowery v. State*, 282 Ga. 68 (646 SE2d 67) (2007), this Court set forth the requirements for handling communications from the jury:

> In an exercise of this Court's inherent power to maintain a court system capable of providing for the administration of justice in an orderly and efficient manner, we take this opportunity to require trial courts to have jurors' communications submitted to the court in writing; to

> mark the written communication as a court exhibit in the presence of counsel; to afford counsel a full opportunity to suggest an appropriate response; and to make counsel aware of the substance of the trial court's intended response in order that counsel may seek whatever modifications counsel deems appropriate before the jury is exposed to the instruction.

Id. at 76 (4) (b) (ii).[6]

Assuming, without deciding, that the record shows that the trial court did not fully comply with the *Lowery* requirements,[7] Styles has not alleged, much less shown, any harm resulting from the trial court's failure to follow these steps precisely. Absent such a showing, Styles has not demonstrated reversible error. See *Grant v. State*, 295 Ga. 126, 129 (4) (757 SE2d 831) (2014) (no harm shown

---

[6] Some of us have questions as to the propriety of our unilateral pronouncement of a new rule of procedure in *Lowery*, rather than through the rule-making process established by the Georgia Constitution.

[7] During deliberations, the jury sent a written question to the court asking, "What happens if we all cannot agree on count 2 (Felony Murder) for Michael?" The court directed that the note be filed and made a part of the record. Outside the presence of the jury, the trial court stated: "All right, we have a question from the jury, and I've talked to — I propose to bring them in and recharge them on multiple counts and multiple defendants." After the court made this statement, neither Styles' counsel nor his co-defendant's counsel responded or made an objection, and the jury returned to the courtroom. The court then recharged the jury as he had informed counsel. The jury then returned to the jury room. When asked if there was any exception to the recharge, Styles responded in the negative.

where the appellant fails to show what different or further action he would have taken had the trial court followed more closely the procedures required for handling jury communications).

4. Styles contends the prosecutor made improper statements of personal opinion during closing argument that intimated the prosecutor's belief that certain witnesses were being truthful and that Styles, who was "a devil," was not being truthful. It is well-settled that a prosecutor may not express to the jury his or her personal belief about the veracity of a witness. See *Woods v. State*, 275 Ga. 844, 848 (3) (c) (573 SE2d 394) (2002).

> The record shows that the prosecutor said:

> And I did not make a deal with the devil. I made a deal with Lamar Jones, Cornell Stephens, and Essie Hollis. I am not going to make a deal with the devil who's sitting over there at the table, Derrick and Michael Styles. That's the devil and I will not make that deal because they are responsible for the death of Alberto [Lumens].

> * * *

> Essie and Cornell have the guts to come up here to the stand and say, you're guilty. They've come out here and put it on the line, and they're looking at time. But they put it on the line. Lamar did, too. And you need to stand up and you need to point to Derrick Styles, the Devil. You

need to point to Michael Styles, and you need to say enough. Enough.

Styles did not object to these statements at trial. "In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." (Citations and punctuation omitted.) *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012). Because Styles did not object at the trial to these comments, this argument is waived. But, even absent waiver, this claim of error lacks merit.

> A closing argument is to be judged in the context in which it is made. What is more, a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.

(Citations omitted.) Id. See also *Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004) ("While it is improper for counsel to state to the jury his personal belief as to the veracity of a witness, it is entirely proper for counsel to urge the jury to deduce such a

conclusion from proven facts." (citations and punctuation omitted)).

The record shows that, in this case, the prosecutor's characterization of Styles as a "devil" was in response to an argument made by the defense. During his opening statement, Derrick's counsel argued that the State had made "a deal with the devil," whom he identified as Lamar Jones. He argued: "Oh, they made a deal with the devil in this case. The devil in this case is Lamar Jones. Lamar Jones is the shooter in this case, and we're going to prove it to you. . . . [W]e're going to show to you who the real devil is in this case." Derrick's counsel repeated this argument during closing argument. Styles' attorney joined in this argument, casting the State's witnesses as devils, arguing: "[T]here were certainly deals made with these three people who were absolutely culpable here, because if there's anybody who should be charged as a party to the crime, it should be those three individuals, not Michael Styles." Thus, when the prosecutor referred to the Styles brothers as devils, he was using the same colorful language used by the defense. The prosecutor, however, was using that language to

rebut the attack on the credibility of the State's witnesses and to argue that it was the defendants who were less credible, as well as more culpable, than Jones, Hollis, and Stephens. This is permissible argument. See *Scott*, 290 Ga. at 885 (2).

5. Styles contends that his trial counsel provided constitutionally ineffective assistance in two ways. He argues that his trial counsel failed to adequately investigate his case and prepare a defense. He also argues that counsel was deficient for failing to move to sever his trial from Derrick's. To succeed on his claim of ineffective assistance of counsel, Styles "must prove both that [his] lawyer's performance was professionally deficient and that [he was] prejudiced as a result." *Gomez v. State*, 301 Ga. 445, 457 (5) (801 SE2d 847) (2017). See also *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). If Styles fails to prove one element of this test, we need not address the other element. See *Gomez*, 301 Ga. at 457 (5). For the following reasons, this claim of error is without merit.

(a) The record shows that Styles was represented at trial by an

attorney with over 30 years of criminal trial experience. At the hearing on Styles' motion for a new trial, defense counsel testified that about 75 percent of his caseload consisted of criminal cases. After being assigned as conflict counsel for Styles through the Georgia Public Defender Standards Council, counsel received discovery from the State and reviewed it. He filed an omnibus motion for exculpatory evidence. In preparation for trial, counsel interviewed a Spanish-speaking witness in the case using a translator, visited the crime scene, and discussed the case with Derrick's attorney. Counsel met with Styles several times prior to trial. He copied and shared all of the written discovery with Styles and discussed it with him. Counsel testified that he would not have given Styles copies of the recorded evidence because he did not believe he would be able to play the discs at the jail.

Counsel testified he believed that Styles' best defense, given the considerable evidence against him, was to "distance" Styles from the crimes and the crime scene and to argue that he was not near the victims' home when the crimes occurred, but was standing by

the car some distance away. Counsel wanted to shift blame to those who went inside the house (Derrick and Jones) to instill reasonable doubt in the jury's mind concerning whether Styles had knowingly participated in the crimes. The trial court concluded that counsel properly investigated and prepared for trial and that Styles had "failed to show deficient performance or resulting prejudice as a result of [counsel's] representation at the trial in this case."

Styles does not articulate what further investigation was warranted, what additional conferences with his trial counsel would have accomplished, what evidence counsel should have discovered, or what his counsel could have done to mount a better defense. As we have explained, "there exists no magic amount of time which counsel must spend in actual conference with his client, and [Styles] does not specifically describe how additional communications with his lawyer would have enhanced his defense." (Citation and punctuation omitted.) *Blackmon v. State*, 302 Ga. 173, 175 (2) (805 SE2d 899) (2017). Further, he has failed to make a proffer showing "what a more thorough investigation would have uncovered."

*Harvey v. State*, 284 Ga. 8, 11 (4) (c) (660 SE2d 528) (2008). Styles has not carried his burden of showing that his trial counsel's performance was deficient in this respect. Consequently, the trial court did not err in denying his ineffective assistance of counsel claim on this ground. See *Jones v. State*, 296 Ga. 561, 565-566 (3) (769 SE2d 307) (2015).

(b) Styles also contends his trial counsel was deficient in failing to file a motion to sever his trial from Derrick's because the State intended to introduce evidence against Derrick that was prejudicial to his defense. Styles argues that, unlike Derrick, he turned himself in to the police whereas Derrick fled the jurisdiction. Further, he argues that the State introduced prior crimes evidence involving Jones and Dominique Styles that had nothing to do with him. He also argues that there was no evidence that he had a gun or was the shooter; rather, the evidence showed that he was merely present.

Counsel testified at the hearing on Styles' motion for a new trial that he considered filing a motion for severance, but decided not to because he thought that it would be better to try both

defendants together and shift the blame to others who were arguably more culpable, like Derrick and Jones. Counsel did not believe the fact that Derrick had fled the state after the crimes or the testimony about the other robbery that Dominique Styles and Jones had committed would hurt his client's case. The trial court ruled that counsel was not ineffective for declining to seek a severance in this case because his reasonable trial strategy was to shift blame away from Styles.

Where trial counsel does not file a motion to sever because counsel reasonably believes the jury will find the co-defendant or co-defendants more culpable, that is a matter of reasonable trial strategy, and it does not constitute deficient performance. See *Jackson v. State*, 281 Ga. 705, 707 (6) (642 SE2d 656) (2007). Further, "the mere fact that the case against one defendant was stronger than the case against the other does not necessitate a separate trial." (Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 819 (2) (b) (809 SE2d 738 (2018). Styles has not carried his burden of showing that his trial counsel's performance was

deficient. Consequently, the trial court did not err in denying his ineffective assistance of counsel claim on this ground. See *Jones*, 296 Ga. at 565-566 (3).

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 10, 2020.
Murder. Brooks Superior Court. Before Judge Hardy.
*Earle J. Duncan III*, for appellant.
*Bradfield M. Shealy, District Attorney, Michelle T. Harrison, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.