**FIRST DIVISION
BARNES, P. J.,
MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules**

**May 13, 2026**

# In the Court of Appeals of Georgia

A26A0850. BAUGHCUM v. THE STATE.

BARNES, Presiding Judge.

A jury found Julian Roy Baughcum, Jr. guilty of rape and two counts of cruelty to children in the third degree. On appeal from the denial of his amended motion for new trial, Baughcum contends that the trial court erred by admitting into evidence a recording of the incident captured on a security camera in the victim's home because the recording violated a provision of Georgia's unlawful eavesdropping and surveillance statute, OCGA § 16-11-62(2). Baughcum also argues that the trial court erred by declining his written requests to charge the jury on attempted rape and sexual battery as lesser included offenses of rape. For the reasons discussed below, we affirm.

Construed in favor of the verdict,[1] the evidence showed that in September 2021, the victim lived with her two youngest children in a small one-bedroom, one-bathroom residence in Walton County, Georgia. There was no separation between the kitchen and living room area. The victim slept on a bed in the living room while her one-year-old daughter slept in a playpen at the foot of her bed. The victim's four-year-old son slept in the nearby bedroom with the door open so that he could see the victim. Guests would sleep on a couch in the living room.

The victim's residence had security cameras in the kitchen and bedroom, as well as several outdoor cameras. The security camera in the kitchen faced the living room where the bed, playpen, and couch were located and recorded what transpired in that area. The victim installed the security system because of prior thefts.

On the night of September 11, 2021, the victim picked up Baughcum and drove him to her residence so that he could install an additional outside security camera for her. The victim had known Baughcum for several years because he previously dated her mother, and he was "like a father to [her]." He would come over for visits and would sometimes sleep on her couch. The victim testified that Baughcum "would

[1] See *Jackson v. Virginia*, 443 U. S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979).

2

make sexual comments" and "was perverted," but she always "would brush it off and tell him to stop doing that, and he would." They had never had a sexual relationship.

Baughcum installed the additional security camera. Because it was late, the plan was for him to sleep on the couch. The victim put her daughter to bed in the playpen in the living room and her son to bed in the bedroom with the door open. She took her sleeping medication and then fell asleep in her bed in the living room as Baughcum took a shower.

The victim's medication put her into a deep sleep. Sometime after the victim fell asleep, Baughcum went over to her bed and stood watching her as he began to masturbate. He leaned over and started touching and kissing the unresponsive victim. Baughcum pulled his shorts down, removed the victim's shorts, got on top of the victim, and attempted to penetrate her with his penis. He was initially unable to do so because the victim was wearing a tampon, but he removed it and dropped it on the floor. Baughcum then lifted the victim's limp legs and began having sexual intercourse with her as she remained unresponsive. According to the victim, when she ultimately awoke, Baughcum "was on top of me, thrusting inside of me. He was inside of me, and my head was hitting the wall, the door behind me. I woke up to him inside of me."

The victim testified that she felt "[h]is penis inside of me" and had not consented to have sex with him.

The victim screamed and pushed Baughcum off her. When the victim yelled that she had been asleep and told Baughcum to get away from her, he responded by claiming that they "had discussed this" and that he had misunderstood her. The victim later testified that they "hadn't discussed nothing, nothing of the sort ever." The victim ran from the house, and her father called the police on her behalf.

A deputy with the Walton County Sheriff's Department responded to the scene and spoke with the victim. According to the deputy, the victim was "upset and crying," and she appeared "skittish" and was repeatedly "looking over her shoulder." After the victim showed the deputy some of the security camera footage from the residence, he contacted the investigation division of the sheriff's department.

The lead investigator assigned to the case spoke with the victim by phone and arranged to meet her at a clinic for a sexual assault examination. When the victim arrived at the clinic, she showed the investigator a recording on her cell phone taken from the kitchen security camera that pointed towards her living room area and

captured what had transpired that night. The investigator used her own cell phone to record the parts of the security camera footage pertinent to the case.

A sexual assault nurse examiner spoke with and examined the victim at the clinic. The victim was upset and was crying, and she told the nurse that she had been raped. The victim had bruises on her arm, lower legs, and thigh that she could not explain. She also had labial bruising, swelling, and pain. The nurse testified that the injuries to the victim's genitalia were consistent with situations where force has been used. The nurse did not observe an injuries inside the victim's vagina or her cervix, but she testified that the lack of injuries in those areas did not mean that there had been no vaginal penetration.

Baughcum was indicted on one count of rape and two counts of cruelty to children in the third degree. Before trial, Baughcum filed a motion to suppress the video recording from the kitchen security camera on the ground that it violated a provision of Georgia's unlawful eavesdropping and surveillance statute, OCGA § 16-11-62(2), given that he did not consent to the recording.[2] The State opposed the

_____

[2]OCGA § 16-11-62(2) provides:
It shall be unlawful for . . . [a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out

5

motion, arguing that Baughcum had no reasonable expectation of privacy in the area recorded and that the recording fell within the statutory exception found in OCGA § 16-11-62(2)(B).[3] The trial court agreed with the State and denied the motion.

At the ensuing trial, the State called as witnesses the victim, the responding sheriff's deputy, the lead investigator, and the sexual assault nurse examiner, who testified to events as set out above. Over Baughcum's objection, the State also introduced into evidence and played for the jury a copy of the video recording taken from the kitchen security camera.[4] Additionally, the State called as a witness Baughcum's biological daughter, who testified that when she was between 10 and 12 years old, Baughcum would get into her bed when she was asleep and "would put his

---

of public view [except where one of the exceptions found in subsections (2)(A)-(D) applies].

[3] OCGA § 16-11-62(2)(B) provides:
[I]t shall not be unlawful . . . [f]or an owner or occupier of real property to use for security purposes, crime prevention, or crime detection any device to observe, photograph, or record the activities of persons who are on the property or an approach thereto in areas where there is no reasonable expectation of privacy[.]

[4] The original video recording taken from the security camera no longer existed at the time of trial, and so the State introduced and played for the jury the copy of the recording stored on the investigator's cell phone.

hands down [her] pants on top of [her] underwear and touch [her]." She testified that the abuse occurred several times a week for about 18 months, and that Baughcum ultimately was convicted of sexual battery after an incident in which he bit her breast. Baughcum elected not to testify and did not call any witnesses.

Baughcum submitted written requests for the trial court to charge the jury on attempted rape and sexual battery as lesser included offenses of rape, but the trial court declined to given the requested charges on the ground that the evidence showed only the completion of the greater offense of rape. After the trial court gave its final charge, the jury deliberated and returned a guilty verdict on all counts. Baughcum filed a motion for new trial, as amended, which the trial court denied. This appeal followed.

1. Baughcum contends that the trial court erred in denying his motion to suppress the video recording from the kitchen security camera that captured what transpired between him and the victim in the living room area. According to Baughcum, the recording violated OCGA § 16-11-62(2) because he did not consent to being recorded and the recording did not fall within the statutory exception found in OCGA § 16-11-62(2)(B).

In reviewing the denial of a motion to suppress, we "construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment." *Hayes v. State*, 320 Ga. 505, 513(2) (910 SE2d 198) (2024) (quotation marks omitted.) We accept the trial court's factual findings and credibility determinations unless they are clearly erroneous. Id. The trial court's legal conclusions are reviewed de novo. *Gates v. State*, 317 Ga. 889, 889 (896 SE2d 536) (2023).

OCGA § 16-11-62(2) provides that subject to certain statutory exceptions, it is unlawful for "[a]ny person, through the use of any device, without the consent of all persons observed, to . . . record the activities of another which occur in any private place and out of public view." If the recording violates OCGA § 9-11-62(2), it is subject to exclusion under OCGA § 16-11-67, which states: "No evidence obtained in a manner which violates any of the provisions of this part shall be admissible in any court of this state except to prove violations of this part."

In opposing Baughcum's motion to suppress, the State relied upon the exception set forth in OCGA § 16-11-62(2)(B), which our Supreme Court has referred to as the "Security Exception." See *Nuckles v. State*, 310 Ga. 624, 626 (853 SE2d 81) (2020). Under the Security Exception, it is *not* unlawful "[f]or an owner or occupier

of real property to use for security purposes, crime prevention, or crime detection any device to . . . record the activities of persons who are on the property or an approach thereto in areas where there is no reasonable expectation of privacy." OCGA § 16-11-62(2)(B). By its plain language,

> the Security Exception sets out the following requirements for its application: (1) the video recording must be made by an owner or occupier of real property; (2) to use for security purposes, crime prevention, or crime detection; (3) with a device to observe, photograph, or record the activities of persons who are on the property or an approach thereto; (4) in an area where there is no reasonable expectation of privacy.

*Nuckles*, 310 Ga. at 628(1) (citation modified).

The video recording from the kitchen security camera clearly satisfied the first, second, and third requirements for application of the Security Exception: the recording was made by the victim (an occupier of the property); the recording was made for security purposes, crime prevention, and crime detection (to prevent and detect theft); and the recording was made with a device used to record the activities of persons on the property (the kitchen security camera). The dispute between Baughcum and the State instead centered on the fourth requirement: whether

9

Baughcum had a reasonable expectation of privacy in the living room area captured by the kitchen security camera.

Our Supreme Court has looked to precedent addressing the Fourth Amendment to the United States Constitution for guidance in determining the meaning of "a reasonable expectation of privacy" under the Security Exception "because that phrase had developed into a term of art relating to privacy rights by the time the Security Exception was enacted." *Nuckles*, 310 Ga. at 631(3). Under Fourth Amendment precedent, the inquiry whether an individual has a reasonable expectation of privacy

> normally embraces two discrete questions. The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy — whether the individual has shown that he seeks to preserve something as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable — whether the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

*State v. Cohen*, 302 Ga. 616, 630(2)(b) (807 SE2d 861) (2017) (citation modified). See

*Smith v. Maryland*, 442 U. S. 735, 740(II)(A) (99 SCt 2577, 61 LE2d 220) (1979); *Katz*

*v. United States*, 389 U. S. 347 (88 SCt 507, 19 LE2d 576) (1967). Furthermore, our Supreme Court has concluded

> that the reasonable expectation of privacy under the Security Exception must be considered in light of the individual expectations of the persons in the area where the video recording occurred and not . . . solely based on a classification of that area. This determination must be made based on the timing and circumstances under which the individual was recorded. Therefore, courts must consider an individual's status in relation to the location, as one person present in a particular area may have a reasonable expectation of privacy, while another person may not.

*Nuckles*, 310 Ga. at 631–32(3).

Applying these principles to the case at hand, we conclude that the trial court committed no error in determining that Baughcum lacked a reasonable expectation of privacy in the living room area recorded by the kitchen security camera. While Baughcum argues that he had a reasonable expectation of privacy because he did not consent to being recorded and was an overnight guest at the victim's residence, those factors do not end the inquiry under the specific circumstances of this case. At the hearing on Baughcum's motion to suppress, the victim testified that the kitchen security camera pointing towards the living room area was clearly visible, that a red

light was activated when it was recording, and that she informed visitors about her security cameras and where they were located so that the visitors would be aware of them. The victim further testified that Baughcum was at her residence on the day in question to add another camera to her security system, that she showed the kitchen camera to him, and that she talked with him about the wiring of the system in the attic. Additionally, the State introduced into evidence an audio recording of a phone call made by Baughcum from jail in which he admitted that he knew about the kitchen security camera because he had installed a light on the camera for the victim.

Given this evidence, the trial court was entitled to find that Baughcum was fully aware of the victim's security camera system that recorded inside her residence, including the kitchen security camera pointed at the living room area, and that he did not protest being recorded or decide to leave. Under these circumstances, the trial court was authorized to conclude that Baughcum did not have a subjective expectation of privacy in the living room area and that the Security Exception therefore applied. See *Rogers v. State*, 290 Ga. 18, 21(2) (717 SE2d 629) (2011) (concluding that defendant had no reasonable expectation of privacy in three-way phone call that he made from jail, where he was warned that the call would be recorded). See also *Smiley*

*v. State*, 279 So.3d 262, 264 (Fla. Dist. Ct. App. 2019) (concluding that defendant did not have a subjective expectation of privacy when he knew that the victim was recording him on her cell phone as they interacted inside her home). Accordingly, Baughcum's motion to suppress the video recording was properly denied.

2. Baughcum contends that the trial court erred in refusing to give his written requests to charge the jury on attempted rape and sexual battery as lesser included offenses of rape. He did not object to the trial court's ruling at the charge conference or after the final jury charge as given. Baughcum therefore concedes that his claim of error is subject to review only for plain error. See OCGA § 17-8-58(b); *Styles v. State*, 309 Ga. 463, 467–68(2) (847 SE2d 325) (2020).

Under plain error review, "we will reverse the trial court only if there was an instructional error that was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Styles*, 309 Ga. at 468(2) (quotation marks omitted). Baughcum carries "the burden of showing a clear or obvious error and further making an affirmative showing that the error probably did affect the outcome below." Id. (quotation marks omitted).

Baughcum has failed to satisfy his burden of showing that the trial court plainly erred in declining to charge on the lesser included offenses of attempted rape and sexual battery.

> A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. [But a] request to charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. Further, when the evidence shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense. Whether the defendant has presented sufficient evidence to warrant a requested charge is a question of law.

*Styles*, 309 Ga. at 468(2) (citation modified).

Here, the uncontradicted evidence showed only the completed offense of rape. "A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will[.]" OCGA § 16-6-1(a)(1). "Carnal knowledge" means "any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1(a). Although Baughcum argues that there was evidence that the victim was sexually assaulted but not penetrated, his argument is without merit and clearly belied by the record. "Penetration of the female sex organ by the male sex organ is a required

14

element of the offense of rape," but "the necessary penetration need be only slight; it is not necessary that the vagina shall be entered, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient." *Smith v. State*, 361 Ga. App. 436, 438(1)(a) (864 SE2d 645) (2021) (citation modified). The victim testified without contradiction that she felt Baughcum's "penis inside of [her]" when she woke up; the nurse examiner testified that the victim had bruising, swelling, and pain in her labia consistent with the use of force; and the security camera recording corroborated the victim's testimony of what transpired. And while Baughcum emphasizes that the State did not introduce test results from the vaginal swabs and other specimens taken from the victim as part of her sexual assault examination, he points to no evidence as to whether testing was ever performed or of the results, and, in any event, such testing was unnecessary to establish penetration. See *Johnson v. State*, 361 Ga. App. 43, 47–48(1) (861 SE2d 660) (2021) (noting that DNA and other corroborating physical evidence was not required to prove the elements of rape). Under these circumstances, the evidence at trial showed only the completion of the greater offense of rape, and thus the trial court committed no error, much less plain error, in declining to charge the jury on attempted rape and sexual battery. See *Payne v. State*, 231 Ga. 755, 755(1)

15

(204 SE2d 128) (1974) (concluding that trial court did not err in refusing to charge on the lesser included offense of attempted rape, where the uncontradicted testimony of the victim and the doctor who examined her injuries "established that the offense committed was rape, and not attempted rape"); *Quenga v. State*, 270 Ga. App. 141, 147(3) (605 SE2d 860) (2004) (determining that trial court did not err in declining to charge on the lesser included offense of sexual battery, where the evidence showed only the commission of the greater offense of rape or no offense at all).

*Judgment affirmed. Markle and Hodges, JJ., concur.*